309 So.2d 123

**Ernest Braxton DIGGS**

**v.**

**STATE.**

**1 Div. 464.**

Court of Criminal Appeals of Alabama.

Feb. 18, 1975.

Ian F. Gaston and J. D. Quinlivan, Jr., Mobile, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Sp. Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury charged the appellant with unlawfully buying, receiving, concealing, or aiding in concealing, certain automotive parts, more particularly, 34 Skil impact wrenches and impact kits, 19 cases of 200 each Autolite spark plugs, 6 boxes of Motorcraft tune-up kits, 11 Motorcraft 24 series batteries, and 2 cases of Quaker State motor oil. The Jury found the appellant "guilty as charged," in the indictment, and the trial court then entered judgment, setting sentence at five years imprisonment. The appellant is in this court with a free transcript and court-appointed counsel.

William O. Allen testified that he was one of the two owners of Acco, Inc., a motor parts wholesale house in Mobile, Alabama. He testified that on the night of February 27, 1973, the business was closed at approximately 6:00 p. m., and that he and his General Manager, Mr. Clyde M. Greaves, left the place of business, located at 1606 Midway Avenue, about this time. He testified that the building was locked, and that there was a chain link fence with two entrance gates, which were also locked upon their leaving. He testified that he came to work shortly after 6:00 a. m. the following morning and discovered in the back end of the building a hole, approximately three and one-half feet square, knocked through the concrete block wall. He said that upon taking inventory they found that certain Skil power tools and impact wrenches had been taken, some cases of oil, boxes of spark plugs, some batteries, some impact kits, and that the total value of the missing property was approximately $19,000.00.

He further testified that the appellant had been in his employment for about two years prior to February 1, 1973, at which time the appellant had left his employment.

On cross-examination, Mr. Allen testified that the appellant had been a driver for his company, that he normally furnished his truck drivers with keys to the outer gates, that he had been informed by his General Manager that all drivers who had worked for him within the period of two to three years prior to this occasion had turned their keys in except the appellant.

Mr. Clyde Greaves testified that he was the General Manager of Acco, Inc., located

at 1606 Midway Avenue, in Mobile. He testified that the appellant had been employed as a truck driver for this company, and was under his immediate supervision. He testified that the appellant was given keys to the outer gates, and when he left the company's employment he did not return the key to the outer gate lock. He testified that the appellant's employment had been terminated on February 1, 1973. Mr. Greaves further tetified that he left the place of business about 6:00 p. m. on the evening of February 27, 1973, and that all doors and the outer gate were locked. He testified that he returned to work shortly before 6:00 the following morning and found a hole nearly four feet square knocked in the rear wall of the building. He testified that he immediately notified Mr. Allen and the Sheriff's Department. He testified that somewhere between $19,000 and $20,000 worth of automotive parts were missing upon taking inventory on February 28. He further testified that he subsequently saw some of the missing parts at the Sheriff's office the next day.

W. E. "Cookie" Estes testified that he was a detective with the Mobile County Sheriff's Department. He testified that about 8:30 on the morning of February 28, 1973, he went to the offices of Acco, Inc., in Mobile, and was advised that there were some missing automotive parts. He further testified that later that same day, accompanied by Sheriff's Detective Beck, he followed a white Ford pickup truck, which had been reported by an informant to them as carrying some of the missing automotive parts. He testified that they stopped the vehicle at the apartment home of appellant's brother, and that in the vehicle were the appellant and his brother. He testified that on looking on the back seat of the vehicle, he saw a case of spark plugs with the name of Acco, Inc., on it. After giving the appellant a *Miranda* warning, he placed the appellant and his brother under arrest.

He further testified that he and his fellow officer radioed for a search warrant, that approximately twenty minutes later some other officers arrived with a search warrant, that they then went into the apartment of appellant's brother and there found numerous automotive supplies, including Skil impact wrenches, tune-up kits, spark plugs, batteries, and two cases of oil. The name of Acco, Inc., was on most of the automotive parts found.

Detective Beck further testified that the same day he talked with the appellant at about 11:30 in the morning at the Sheriff's office, after first giving him a full *Miranda* warning. The trial court here, in response to motion, excluded the Jury during the laying of the *Miranda* and pre-*Miranda* predicate, as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Duncan v. State, 278 Ala. 145, 176 So.2d 840; and Smith v. State, 282 Ala. 268, 210 So.2d 826.

The statement of the appellant was then placed in evidence through Detective Albert Stroh, who, together with Detective Beck and Detective Travis, questioned the appellant at the Sheriff's office. The appellant's statement is as follows:

"/s/ Comp #12039       Feb. 28, 1973

"The following is a statement of Earnest Braxton Diggs as given to Albert Stroh who has identified himself as a Detective for Mobile County.

"Q. Earnest how old are you

"A. 20 yrs old

"Q. How far did you go in school

"A. The eleventh grade

"Q. Where do you live

"A. 1555 Duval St Apt B.

"Q. Where do you work

"A. Unemployed now but I used to work at Acco. And sometime I pick up work from longs employment

"Q. Are you married

"A. Right I got three kids

"Q. Are you familiar with Acco Inc

"A. Yes it at 1606 Midway Ave

"Q. Are you familiar with a burglary at Acco Inc on Feb 27, 1973

"A. Yes sir. Me, my brother Eugene Diggs, and my uncle Eugene Diggs, Sr. burglarized it

"Q. How (sic) who planned the burg and how long had it been planned

"A. My brother Eugene planned it a couple of months ago while I worked at Acco and got me and my uncle to help him burglarize it

"Q. Where did you all get together and what time did you all get together to burglarize Acco Inc

"A. My brother Eugene and uncle Eugene picked me up at my house in uncle Eugene pickup in a white Ford about 6:45 PM. My brother Eugene drove straight to the Acco Company. We got there about 7:00 PM. I stayed in the truck to watch for employees or anybody that would here (sic) the noise while Eugene busted a hole in the back wall with a hammer

"Q. Where was uncle Eugene

"A. Stood by the gate and helped watch while brother Eugene busted a hole in the wall then he waved to me and I backed the truck up to the gate and uncle Eugene climed over and helped brother Eugene hand the spark plugs and power tools batteries over the fence to me and I loaded it on the truck. Brother Eugene drove the truck back to the apt on South Woodlawn and unloaded it in the apt then they took me home and I stayed home the rest of the night

"Q. How did you get over to Eugene house this morning

"A. Brother Eugene came over to my house and picked me up about 9:00 AM and we went back to his apt and helped him load 7 boxes of spark plugs in his car that he had sold then he was taking me

home as he went to deliver the spark plugs when the detective arrested us.

"Q. How much was your part of the burglary was (sic) going to be

"A. My brother Eugene said he would give me enough to get my car out of the shop the bill was 216.00 dollars. That was going to be my cut of the burglary.

"Q. Do you know where any of the stuff went

"A. No they took me home after the burglary.

"Q. How much stuff did you all get.

"A. The pickup body was over half full

"Is the above statement true and correct to the best of your knowledge and in your own words as near as you can remember.

"Albert Stroh          Yes it is except

"Ernest B. Diggs

"Q. Earnest didn't you have a key for Acco, Inc

"A. Yes I had it when I worked there and didn't turn it in when I left that the key we used to get in the gate.

"Mr. Ernest Diggs"

The defendant presented the testimony of his brother, Eugene Cecil Diggs, who testified that he was twenty-nine years of age, and that, accompanied by two other black males, entered the premises of Acco, Inc., about 9:00 on the evening of February 28, 1973. He testified that both he and his uncle had plead guilty for burglary of these premises, then was sentenced. He testified that the next morning he had stopped by to see his brother, the appellant, and picked him up, and that his brother was riding in the car with him when they were stopped by the officers in front of his apartment. He testified that his brother was not with him the night before when he burglarized the Acco Warehouse. He admitted that he had had a prior convic-

tion in 1965 for a bank robbery in Greensboro, North Carolina.

## I

The appellant contends that his attorney was unduly restricted in the cross-examination of Mobile County Sheriff's Deputy, Albert Stroh, pertaining to the circumstances under which the appellant's statement was given to the officers. The *Miranda* predicate and waiver of rights in this cause is found on record page 80:

"YOUR RIGHTS

"PLACE /s/ Sheriffs Department

"DATE /s/ Feb 28, 1973

"TIME /s/ 11 $^{30}$ AM

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can and will be used against you in Court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

"WAIVER OF RIGHTS

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises, threats, or inducements have been made to me and no pressue or coercion of any kind has been used against me.

"Signed /s/ Ernest Braxton Diggs

"Witness /s/ W. T. Travis

"Witness _____

"Time 12 $^{01}$ PM            "

As heretofore noted, the record contains a full pre-*Miranda* predicate as well. This record also indicates that the appellant was twenty years old, had completed the eleventh grade in school, was married, had three children, and was interrogated for approximately thirty minutes by three officers before giving the statement herein set out.

The trial court, after allowing full voir dire examination of both Detective Beck and Detective Stroh, determined the statement in question would be purely voluntary, and directed that the same be admitted in evidence. We are in full accord with the finding of the trial court, as the same is amply supported by the testimony in this record. We do not accord the instance referred to by appellant's counsel on record pages 86 and 87 as unduly restricting his rights to cross-examination. The questioning referred to in appellant's brief is repetitious of matters which had been ruled upon by the trial court on the issue of voluntariness (R. pp. 78 and 79), and that the colloquy on record pages 86 and 87 was repetitious cross-examination upon a matter which had been previously determined by the trial court; hence, the appellant's right to full and extensive cross-examination was not here unduly restricted. Wright v. State, 49 Ala.App. 539, 274 So. 2d 95, and authorities therein cited.

We find no error in the ruling above referred to.

## II

Following an extensive oral charge, to which the appellant announced, "No ex-

ception," the trial court submitted the cause to the jury. We are of the opinion that the State here presented a prima facie case; hence, this matter was properly submitted to the jury for their determination. Johnson v. State, 41 Ala.App. 351, 132 So.2d 485; Coe v. State, 53 Ala.App. 457, 301 So.2d 223, and authorities therein cited.

After careful examination, we find no error in this record. The judgment appealed from is due to be and the same is hereby

Affirmed.

All the Judges concur.