447 So.2d 1312 (1984)
David Robert PHILLIPS
v.
STATE of Alabama.
6 Div. 174.
Court of Criminal Appeals of Alabama.
January 31, 1984.
Rehearing Denied March 20, 1984.
*1314 Harold P. Knight, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen. and Jane LeCroy Brannan, Asst. Atty. Gen., for appellee.
TYSON, Judge.
David Robert Phillips was indicted for unlawfully obtaining or exerting unauthorized control over one 1982 Freightliner truck, Serial Number: 1FUPYDYB3CH208084, the property of Owel Newman, of the value of an amount in excess of $1,000.00, contrary to the provisions of § 13A-8-3, Code of Alabama 1975.
The jury found the appellant guilty as charged in the indictment, and the trial court set sentence at 15 years' imprisonment as punishment for theft of property in the first degree.
Owel Newman testified he operated a trucking company in the Belk community of Fayette County in May of 1982. He stated that he returned to his home on the evening of May 21, 1982, and found a large 18 wheel Conventional Cab Freightliner with sleeper and a 400 Cummings engine in it missing. Mr. Newman stated that he had paid in excess of $64,000 for the truck and that as of May 21, 1982 the vehicle was worth at least that amount. He then gave the serial number for the truck from the bill of sale, showing the number as 1FUPYDYB3CH208084.
Mr. Newman stated that he had left the vehicle at his home and it was missing when he returned that night about 10 o'clock from a visit to Columbus.
The State then presented the testimony of several deputy sheriffs from both Fayette and Walker counties who went to the home of Mr. Hershel Phillips, the appellant's father, and there received his permission to search the premises, including a shop which was located nearby. The appellant was observed working over a truck with the hood raised when the deputies went on the premises.
The appellant's father, Mr. Hershel Phillips, testified and stated that he had given the sheriff's deputies in question permission to go on the premises and to make a search for missing property. This was on May 25, 1982.
A part of the missing truck taken from the Newman premises was found, together with clothing which belonged to the driver. An inventory was made of several missing items and this was placed in evidence.
The consent by Mr. Hershel Phillips to search the premises was verified by several of the deputies who went to the premises in question on May 24, 1982. The appellant and his companions were advised that they had received consent to search by the officers in question. An inventory was made of items found on the premises and photographs taken at the time of the search. These were placed in evidence.
The appellant testified that he was simply working on the premises and was not aware his companions had purchased some items which ultimately turned out to have been stolen. The appellant made a motion to exclude and a motion for a judgment of acquittal at the close of the State's evidence. He also filed a motion for new trial which was overruled by the trial court.

I
The appellant first avers in brief that "there is a fatal material variance in the indictment which charges property taken was personal property of a named individual and proof showed the property belonging to a corporation." We have carefully examined this record and find no challenge to the indictment anywhere in this record. It should be noted that the motion for new trial avers that the trial court erred in overruling the demurrer to the indictment but the aforesaid demurrer is nowhere to be found in this record. Secondly, there was no challenge either by motion to quash the indictment or demurrer challenging the legal sufficiency of the indictment or pointing out that there was some variance between the allegations made and the proof offered.
*1315 Moreover, the State's proof at trial, through Mr. Newman, was simply that he owned and operated a trucking business in Fayette County, Alabama, on the date in question and that there was the large truck removed from his premises on the date and gave its description and stated where he had left it. It was the appellant, through counsel, who brought out the fact that the bill of sale was made out to N & N Trucking Company, Inc., and on inquiry on cross-examination, Mr. Newman stated that he and his wife owned all of the stock. He stated that he was president of the company and that she was secretary-treasurer and that he owned 99 of the 100 shares of stock. He also owned the land on which the truck was situated at the time it was taken. Following this testimony, there was no challenge or motion made with reference to the alleged discrepancy between ownership as laid in the indictment and proof offered at trial.
Some time later during the trial, and after an issue was made with reference to a conversation with a juror, appellant's counsel moved to exclude the testimony of Mr. Owel Newman, who he stated the proof showed was not the owner of the truck as charged, but rather the truck was owned by N & N Trucking Company, Inc. This is not the proper way to raise a discrepancy between the ownership of the property at issue.
Moreover, we fail to see how the appellant is injured, since his own counsel brought out on cross-examination the ownership by the corporation when the proof offered on direct was simply that Mr. Newman was the owner of the business and of the truck in question. Thus, the trial court properly overruled the motion to exclude on this basis. See Boutwell v. State, 432 So.2d 531 (Ala.Cr.App.1983).

II
Appellant next challenges the indictment in that the appellant states that the indictment fails to show that the Code of Alabama 1975, § 15-8-70, was complied with by a presentment to the judge in open court in the presence of eleven other grand jurors. Appellant's counsel states that the circuit clerk failed to sign the indictment.
The provisions of the Code section above referred to indicate that the endorsement by the circuit clerk is merely directory. Russell v. State, 33 Ala. 366 (1859).
Moreover, any challenge to the indictment pointing out that such has not been properly endorsed or properly presented in court must be made before pleading the general issue in the case. Jackson v. State, 74 Ala. 26 (1883). Thus, the issue is not properly presented for review in this case.

III
The appellant argues that the seized items taken at the premises of Mr. Hershel Phillips were the result of an illegal search and seizure carried on by sheriff's deputies of Fayette and Walker Counties, acting jointly, but without a search warrant and without probable cause. This contention is without legal merit. Each of the officers who took part in the search of the premises on May 25, 1982, told of finding the appellant standing over the hood of a truck with his companion and also stated that the appellant's father told them that they could come back and search the premises in question. The appellant simply replied, "All right" and turned around and walked off. The consent to search, moreover, was borne out through the testimony of Mr. Hershel Phillips, who stated at trial that he did, in fact, give his permission to the deputies to make the search in question.
Taylor v. Alabama, 399 So.2d 881, 891 (Ala.1981) states:
"A search warrant is not required when the party in control of the searched premises gives his consent to the search, Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The consent, however, must be `freely and voluntarily given,' and the prosecution has the burden of proving voluntariness, Bumper v. North Carolina, *1316 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Consent given after a claim of authority to search by a police officer is not valid, since he has in effect told the occupant of the house that he has no right to resist the search. `Where there is coercion there cannot be consent.' 391 U.S. at 550, 88 S.Ct. at 1792. However, `knowledge of a right to refuse is not a prerequisite of a voluntary consent.' 412 U.S. at 234, 93 S.Ct. at 2051. Although consent may not be coerced, either explicitly or implicitly, `[v]oluntariness is a question of fact to be determined from all the circumstances.' 412 U.S. at 248-49, 93 S.Ct. at 2058-59. While knowledge of the right to refuse consent to a search, or lack thereof, is a factor to be considered in assessing voluntariness, it is not determinative. 412 U.S. at 249, 93 S.Ct. at 2059." Jackson v. State, 414 So.2d 1014 at 1021 (Ala.Crim.App.1982).
As noted above, the appellant's father gave consent for the search to be made of the premises in question and he in fact, being the owner, had the authority to do so. See Scott v. State, 337 So.2d 1342 (Ala.Cr.App. 1976) and Toston v. State, 333 So.2d 161 (Ala.Cr.App.1976).
Under the evidence here presented at trial, a jury question was presented and the State therefore properly presented a prima facie case and appellant's motion to exclude and motion for judgment of acquittal were properly overruled. Diggs v. State, 54 Ala.App. 414, 309 So.2d 123 (Ala. Cr.App.1975).

IV
The appellant argues that the district attorney made prejudicial remarks to the venire being selected just before trial. (R. 5-9)
"THE COURT: Anything further for the State? "MR. JOHNSTON: I'd just like for Mr. Knight to know which case we will be trying today. There are five pending cases and I just want him to know that of the five cases we want to try case number CC-82-134.
"THE COURT: Anything further?
"MR. JOHNSTON: Nothing further.
"THE COURT: Mr. Knight?
"MR. KNIGHT: No, sir.
"THE COURT: Ladies and gentlemen, you can be excused for about 30 minutes. The attorneys will strike a jury and when you return twelve of you will stay and the rest of you will be released. You can now be excused.
"(Prospective jurors were dismissed for 30 minutes.)
"(Prospective jurors not present.)
"MR. KNIGHT: Judge, I'd like to file a Motion for Mistrial on the basis of statements and comments made by the District Attorney that there were five pending cases and that he wanted to tell me which of the five pending cases was going to be tried. I think that is highly prejudicial. I think it influences the venire prior to striking in placing in their mind that there are five pending cases against this defendant which, in fact, there isn't and I'd like to move for mistrial at this time.
"MR. JOHNSTON: I might say this. The fact is that the five cases are against three different defendants and they are on this docket and, until this morning, I didn't know that Mr. Knight knew which case we were going to try. He telephoned me last night to ask which case it was and at that time I didn't know.
"The purpose of what I said was to let him know which defendant in which case and since he hadn't asked, I didn't know whether he knew or not which case we were talking about.
"MR. KNIGHT: There are actually only four cases pending on today's docket and I don't think it can be erased in their mind that this guy has got five cases pending against him.
"THE COURT: He didn't say five cases pending against this individual. He said of the five cases pending we want to try this case. The other cases could have been pending against anybody. *1317 He didn't say there were five cases pending against this individual or that these other cases were in any way related. I took it he was merely pointing out which case on the docket we were trying.
"MR. KNIGHT: Judge, you and I understand what his statement was, but the venire that knows nothing about it could only assume from that statement that the five pending cases were against this defendant.
"THE COURT: I don't think the statement was an announcement to the jury venire. He didn't make it in a loud voice, he made it directed toward the Court and you and I don't know that the Jury, for that matter, even heard it and if they did, it's not my opinion that the total circumstances surrounding what was said and the way it was said was such as to taint their minds.
"MR. KNIGHT: In answer to that, Your Honor, I would have to say that some of those jurors were as close to his statement, where he was standing, as you and I were. In fact, some of them were probably closer to have heard his statement and there's no way for me to know whether they all heard it or only half of them heard it, but I think it would be highly prejudicial to put this man on trial.
"THE COURT: I'll give you the opportunity, if you would like, to voir dire the jury on that point. The jury has not been selected. I'll give you the opportunity to ask the jury if they heard the question and then follow it up with additional question as to whether or not, if they said they did, this was something they couldn't erase from their minds and, if they say they cannot give the defendant a fair and impartial trial, then they can be struck for cause.
"MR. KNIGHT: I just think the damage has been done and I don't know if it can be removed.
"THE COURT: I think your choice is to make an objection and give the Court the opportunity to remove it. Moving for a mistrial is not the way to do this because to merely move for a mistrial and have a hearing in Chambers does not give the Court an opportunity to correct it.
"MR. KNIGHT: I will enter it also as an objection and if the Court wants to make a comment, that, of course, is in your purview for today.
"THE COURT: You want to enter it as an objection in open court in front of the jury?
"MR. KNIGHT: I also, of course, want to enter it as a Motion for Mistrial.
"THE COURT: I want you to make your choice. You're trying the case, but you recognize the fact that if you make an objection in open court I'm going to voir dire the jury, if you don't, on this point and ask them individually if they heard the statement and if it tainted them.
"We can't sit back here and assume that the entire jury is tainted. So, you're either going to have to make your objectionthat's going to be your choice and it will be made in open court and I'll then voir dire the jury on this point.
"MR. KNIGHT: I stand on my motion for mistrial.
"THE COURT: You decline to object to the statement made by the District Attorney?
"MR. KNIGHT: In the form of an objection, yes, sir. I'm objecting in the form of a mistrial.
"THE COURT: Requesting a mistrial is not an objection to the statement. So, your Motion has been made and your Motion for Mistrial is overruled.
"(Prospective jurors present.)"
As noted by the trial court, the assistant district attorney was simply informing defense counsel as to the case number of the particular case that would be tried that morning. Counsel had telephoned him the night before and asked which case would be tried first. The appellant's name was not mentioned nor was there any indication that the remaining cases were all against this appellant. In *1318 fact, the cases were against two other defendants. We see no error in the trial court's ruling denying appellant's motion for mistrial. The granting of a motion for a mistrial is an extreme measure and in light of the record here presented, we are of the opinion that such motion was properly denied. See Nix v. State, 370 So.2d 1115 (Ala.Cr.App.1979), cert. denied, 370 So.2d 1119 (Ala.1979).

V
Finally, appellant's counsel urges that error occurred when a discussion took place between Mr. Newman, the owner of the truck, and a juror in the hall during a recess. (R. 96-99).
"MR. KNIGHT: First, Judge, I want to make a Motion for Mistrial and as basis for that state to the Court that a juror, Joel Killingsworth, was observed yesterday, after our recess, shaking hands with and talking to Mr. Owel Newman in the hall outside the courtroom.
"Also, the same juror was observed going into the Judge's Chambers or secretary's office on two occasions and I feel like it's highly improper and that's contrary to the Judge's instructions to them. I feel like that that's the basis for an attempt to influence or an overt act on the part of the complaining witness with one of the jurors and I move for Mistrial.
"THE COURT: You say `going into the Judge's office', he didn't go into my office as such.
"MR. KNIGHT: Not into your private office. On two occasions he went into your secretary's office.
"THE COURT: What did he do in there?
"MR. KNIGHT: I was not there. The two witnesses who observed him are sitting out here in the hall.
"THE COURT: I have a bathroom right there.
"MR. JOHNSTON: I know one thing he did. He asked me where there was a phone he might use and I told him he might use that one in there.
"THE COURT: If you want me to call the juror in and ask him if he and the complaining witness discussed the case or ask both of them if there was any discussion of the case, you have the right to do so, but I don't know what the duration of the conversation was. You're going to need to go further. On the face of you just making the motion without supporting it in any way I'll deny it. At the same time, I'm telling you that you have the opportunity to try to go further with it, if you'd like to.
"MR. KNIGHT: The fact that the complaining witness in the case who sat at the trial table takes the opportunity and time to talk to one of the jurors and shake hands with him, Judge, I think, is highly prejudicial. I think that for me to question him would certainly aggravate and make the jeopardy of my client even worse.
"MR. JOHNSTON: Your Honor, my position is he's going to have to prove his allegation that it's prejudicial. The mere fact he states its prejudicial, I don't think, has any weight to the motion at all.
"MR. KNIGHT: Well, if the Court allows, ask Mr. Newman to come in and ask him.
"THE COURT: I'll allow you to do whatever you want.
"MR. KNIGHT: May I have him come in and put it on the record?
"THE COURT: Yes.
"OWEL NEWMAN was previously sworn and testified as follows:

"DIRECT EXAMINATION
"BY MR. JOHNSTON:
"Q. You've already been sworn as a witness. Mr. Knight has questioned your shaking hands with one of the jurorswhat's his name?
"MR. KNIGHT: Joel Killingsworth.
"Q. and says you had some kind of conversation with him, and for the record, we need to know what that conversation was about and then the Judge *1319 is going to decide whether it's prejudicial as far as the case is concerned. Could you tell us?
"A. I know when you're talking about. It's after the map was drawn yesterday and I walked by and Joel was standing there looking at the map and I said, `Pretty good artist', you know, we just commented on the drawing and that was the extent of the conversation.
"Q What did he say, if anything?
"A Seems like he said yeah it is or something like that.
"Q Did you shake hands with him?
"A I can't remember if I shook hands or not now. I can't remember. I don't think I did, but I wouldn't say. A lot of times you might walk up and shake hands with somebody. I do whether I know them or not, but that was the extent of it.
"THE COURT: I believe you said it took place in the hallway. Did you see him again outside the courtroom that you recall?
"THE WITNESS: Not that I recall. The only time I've been back there was to use the restroom or get a cup of coffee and he's been on the stand everytime I've been back there.
"THE COURT: He's been in the jury box?
"THE WITNESS: Yeah, right.
"MR. KNIGHT: Do you know Joel Killingsworth?
"THE WITNESS: No, sir, never seen him before the trial.
"MR. KNIGHT: Judge, I think that comment on the evidence that's been introduced by the State is involving discussion of the case.
"THE COURT: Do you want to ask him anything?
"MR. KNIGHT: No.
"THE COURT: Your Motion for a Mistrial on those grounds will be denied.
"MR. KNIGHT: I except."
As indicated in the trial court's ruling, Mr. Newman had simply indicated that he was going into the secretary's office to wash his hands and there was, in fact, no discussion with reference to the particular map which had been placed in evidence. Mr. Newman indicated that he really did not know Mr. Killingsworth, the juror, and, in fact, the record discloses that there was no discussion with reference to the evidence before them. The appellant's motion for mistrial was properly denied. There has been no showing of prejudice to appellant which would justify the granting of such motion. See Cox v. State, 394 So.2d 103 (Ala.Cr.App.1981) and Woods v. State, 367 So.2d 974 (Ala.Cr.App.1978), also Anderson v. State, 389 So.2d 180 (Ala.Cr.App. 1980).
We have carefully examined this record, including all assertions of error made by the appellant on this appeal. This record is free of error and the judgment of the trial court is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.