The appellant was indicted for murder in violation of §13A-6-2, Code of Alabama 1975, and conspiracy to commit murder in violation of § 13A-4-3, Code of Alabama 1975. He was found guilty of murder and sentenced to 48 years in prison. He raises five issues on appeal. The relevant facts will be discussed as they arise below.
 I
The appellant first contends that the trial court erred in admitting into evidence a pair of sweatpants with blood on them and a photograph of the sweatpants because, he argues, they were not worn by the victim and were inflammatory and prejudicial. It appears from the record that only a photograph of the sweatpants and not the pants themselves were admitted into evidence.
Thomas Bradley, a police detective with the City of Gadsden who investigated the scene of the crime, testified that a pair of Adidas warm-up pants with blood on them were found near the victim's body. He also testified as to other items found at the scene. Bradley then testified that he took photographs of the crime scene. At that point, the appellant's attorney requested that the admissibility of the photographs be discussed. During the sidebar discussion, there was a reference to the sweatpants which could have been interpreted as being a reference to the sweatpants themselves rather than the photograph. Our review of the entire record, however, leads us to the conclusion that only a photograph of the sweatpants were admitted. The following notation by the court reporter appears in the record immediately following the sidebar discussion: "Whereupon four photographs were handed to the court reporter and marked for identification as State's Exhibits 4 through 7." (R. 179.) Furthermore, there is no reference to the sweatpants themselves in the list of exhibits in the record. Although other items of physical evidence (e.g., the murder weapon, spent shotgun shells, etc.) are specifically referred to in the list of exhibits, there is no reference to the sweatpants. Thus, we need not address appellant's contention that the admission of the sweatpants themselves was error.
A photograph of the sweatpants was admitted into evidence. The admissibility of photographs lies within the trial court's discretion and will be reviewed only to determine whether there has been an abuse of that discretion.Jackson v. State, 553 So.2d 647 (Ala.Crim.App. 1989); Barnesv. State, 445 So.2d 995 (Ala.Crim.App. 1984). Photographs of the crime scene tend to lead the jury to a better understanding of the surroundings and may be admissible for that purpose.McAdams v. State, 378 So.2d 1197 (Ala.Crim.App. 1979). We find that the trial court did not err in admitting the photograph. The photograph was illustrative of the crime scene and corroborated the testimony of Detective Bradley. See, e.g.,Harrell v. State, 470 So.2d 1303 (Ala.Crim.App. 1984),aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935,106 S.Ct. 269, 88 L.Ed.2d 276 (1985). Even if the trial court had erred in admitting the photograph, such error would have been harmless as the photograph was not used in any manner to identify or incriminate the appellant or to connect him to the crime. See, e.g., Carroll v. State, 370 So.2d 749
(Ala.Crim.App.), cert. denied, 370 So.2d 761 (Ala. 1979). *Page 960 
 II
The appellant next contends that the trial court erred in not allowing the appellant to question a defense witness as to the victim's reputation for carrying a gun.
 "If the evidence tends to show that the accused acted in self-defense, the accused is entitled to prove that the deceased was in the habit of carrying firearms or other deadly weapons or that he had the reputation of being habitually armed. Such evidence, however, is only admissible if the accused has introduced or offers to introduce other evidence that he knew or had been informed of such habit prior to the alleged offense, as otherwise it could not have influenced his conduct."
C. Gamble, McElroy's Alabama Evidence § 63.01(2) (3rd ed. 1977). See, also, Vander Wielen v. State, 47 Ala. App. 108,251 So.2d 240, cert. denied, 287 Ala. 742, 251 So.2d 246 (1971). "The cases do not go to the extent of supporting the contention that a witness other than defendant knew this fact when such fact is not traced to defendant's knowledge." Vander Wielen,47 Ala. App. at 111, 251 So.2d at 242 (quoting Sims v. State,139 Ala. 74, 36 So. 138, 140 (1904)). The appellant did not present any evidence prior to the time the question was asked that the appellant knew of the victim's reputation for carrying a weapon, nor did he make an offer to prove such knowledge. Thus, the trial court did not err in disallowing the testimony. See,e.g., Burnett v. State, 380 So.2d 1021 (Ala.Crim.App. 1980). We also note, that even if the trial court had erred, the appellant never made an offer of proof, and the record does not indicate what the witness's response would have been. If no offer of proof is made and the witness's answer is not apparent in the record, this court will apply the harmless error rule rather than speculate on the materiality of the witness's answer. Ex parte Glover, 508 So.2d 218 (Ala. 1987).
 III
The appellant contends that the trial court erred in failing to grant his motion for mistrial and subsequent motion for new trial which were based on the ground that the appellant's codefendant was on the jury panel from which his jury was selected. The record reveals that prior to the voir dire examination of the jury venire, the district attorney approached the bench and informed the trial judge that a codefendant in the case was on jury duty and that he also had a case on the trial judge's docket that morning in which a forfeiture was entered because he had not appeared. The trial judge stated that the matter would be discussed at the break. During the preliminary examination of the jury venire, the codefendant, Darin Jones, responded that he thought he had been subpoenaed as a witness in the case. It appears that Jones was subpoenaed as a defense witness. After the questioning concluded, the appellant moved for a mistrial. The motion was denied. The court stated that the juror would be excluded from the panel and the matter would be taken up at the break.
Following the voir dire examination by the attorneys, the trial judge asked, "Do we have any juror here who has either been communicated to or communicated with somebody else concerning this case since y'all convened this morning? Has anybody tried to talk to you about this case at all?" (R. 23.) There was no response from the jurors. The trial judge then instructed the jurors not to discuss the case with each other or to allow anyone to talk to them about the case. He further instructed them that if any discussion occurred, they should report it to him immediately. During the next break, the trial judge stated that he had his bailiff follow Darin Jones and that Jones had not mingled with the other jurors. Jones was then excused from the jury because he was a potential witness in the case. Before the jurors were excused for the day, the trial judge again instructed the jurors not to discuss the case with anyone and to inform him immediately if anyone tried to communicate with them. After the jury was selected, the trial judge gave similar instructions during his preliminary instructions to the jury. The record contains no indication *Page 961 
that any member of the venire or of the jury that heard the case ever reported receiving any communication about the case or discussing the case.
At the hearing on the motion for new trial, the appellant argued that Jones's mere presence on the panel influenced the jury. The appellant, however, did not present any evidence that any of the jurors were so influenced. The trial judge stated that when he saw Jones sit in the jury room, the bailiff was sent to get Jones and he was excused as a juror. He further stated that he observed Jones in the courtroom and that Jones did not talk to anyone. The motion for new trial was denied.
It is clear from the record that the presence of Jones on the panel was mere happenstance. We are aware that Jones was a codefendant and, thus, was not an ordinary witness. However, the cases concerning communications between jurors and prosecution witnesses or relatives of the victim are applicable in this case. "The prejudicial effect of communications between jurors and others, especially in a criminal case, determines the reversible character of the error. Whether there has been a communication with the juror and whether it has caused prejudice are fact questions to be determined by the Court in the exercise of sound discretion."Gaffney v. State, 342 So.2d 403, 404 (Ala.Crim.App. 1976),cert. denied, 342 So.2d 404 (Ala. 1977). "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." Weeks v. State,456 So.2d 395, 401 (Ala.Crim.App. 1983), aff'd,456 So.2d 404 (Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051,85 L.Ed.2d 324 (1985) (quoting Smith v. Phillips, 455 U.S. 209,217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78, 86 (1982)). Furthermore, " '[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.' " Weeks, 456 So.2d at 401 (quoting Smith v. Phillips,455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78, 86
(1982.)
The record reveals that the trial judge fully investigated the potentially prejudicial situation and found that the jurors had not been influenced by the presence of the codefendant. Furthermore, he thoroughly instructed the jury not to discuss the matter with anyone and to advise him if anyone attempted to communicate with them about the case. We find that the trial judge did not abuse his discretion in denying the appellant's motions. The appellant has not demonstrated any prejudice that would justify the granting of a motion for mistrial or motion for new trial. See, generally,Hand v. State, 472 So.2d 671 (Ala.Crim.App. 1984), rev'd onother grounds, 472 So.2d 675 (Ala. 1985) (trial court did not err in denying motion for mistrial which was based on observance of conversation between prosecution witness and two jurors during recess); Phillips v. State, 447 So.2d 1312
(Ala.Crim.App. 1984), cert. denied, 471 U.S. 1019,105 S.Ct. 2047, 85 L.Ed.2d 309 (1985) (although juror and complaining witness were seen talking during recess, there was no showing of prejudice that would justify granting of motion for mistrial); and Gaffney (no abuse of discretion in denying motion for new trial which was based on the observance of a conversation between the mother of deceased victim and juror during recess).
 IV
The appellant next contends that the trial court erred in denying his motion for judgment of acquittal on the conspiracy charge. The record reveals the following evidence of conspiracy to commit murder: The night before the murder, the appellant and several of his friends were asked to leave a party. After the party, he and his friends went to a convenience store. The victim, Glen Williams, and his friends drove up to the convenience store. Williams and one of the appellant's friend, Willie Brown, got into a fight. Later that night, Williams fired shots at the car in which the appellant and his friends were riding in.
The next day, the appellant and some of his friends were riding around. The appellant *Page 962 
had a shotgun between his legs. He said he was going to [expletive] Glen Williams up. (R. 58.) Willie Brown and the appellant told the friend who was driving the car where to find Williams. They saw Williams and followed him at Willie Brown's and the appellant's instructions. Later that evening, the appellant and his friends saw Darin Jones and Bobby Rudolph at the convenience store. The appellant, Jones, and Rudolph talked about what had happened between Williams and Brown the night before. Darin Jones said he wanted to get in on the action. Jones and Rudolph got in the car with the appellant and his friends. Jones asked to be taken to his house so that he could pick up some things. When they got to his house, Jones got his shotgun. Jones loaded the shotgun as soon as he got back in the car. Shortly thereafter, Brown got out of the car to go to the bathroom. When they went back to pick Brown up, he was fighting with Williams. Jones got out of the car and fired two or three times. The appellant got out of the car and shot Williams in the leg. Jones got back in the car without the appellant. The appellant's friends left the scene. The appellant later said that as he was running away, Williams started calling him names and he went back and shot him again. Williams died of gunshot wounds to the leg and chest.
In determining whether the State presented a prima facie case, this court must review the evidence in the light most favorable to the State. Gullatt v. State, 409 So.2d 466
(Ala.Crim.App. 1981); Snider v. State, 406 So.2d 1008
(Ala.Crim.App.), cert. denied, 406 So.2d 1015 (Ala. 1981); Smelcher v.State, 385 So.2d 653 (Ala.Crim.App. 1980). "Where the evidence presented presents a question of fact for the jury, and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for acquittal or the denial of a motion for new trial do not constitute error." Harris v. State,539 So.2d 1117, 1124 (Ala.Crim.App. 1988). See also Finchum v.State, 461 So.2d 37 (Ala.Crim.App. 1984). "A conspiracy need not be proved by direct and positive evidence, but may be inferred from the conduct of the parties and all the circumstances accompanying the doing of the act." Campbell v.State, 508 So.2d 1186, 1192 (Ala.Crim.App. 1986). See alsoSnider. A conspiracy agreement need not be formal or express.Connelly v. State, 30 Ala. App. 91, 1 So.2d 606, cert.denied, 241 Ala. 132, 1 So.2d 608 (1941). "It is sufficient if there is a meeting of the minds or a tacit agreement, its existence being generally a matter of inference from the acts of the participants." Connelly, 30 Ala. App. at 92,1 So.2d at 607.
The record reveals that the State presented a prima facie case of conspiracy to commit murder. Furthermore, even if the trial court had erred in denying the appellant's motion for judgment of acquittal, such error would have been deemed harmless because the appellant was acquitted of the conspiracy charge. Wysinger v. State, 448 So.2d 435
(Ala.Crim.App. 1983); Segars v. State, 409 So.2d 1003
(Ala.Crim.App. 1982).
 V
The appellant next contends that he was denied effective assistance of counsel because his trial attorney did not request that the jury be charged on manslaughter. This matter was never raised at the trial court level. A claim of ineffective assistance of counsel cannot be raised for the first time on direct appeal. Jackson v. State, 534 So.2d 689
(Ala.Crim.App. 1988); Dossey v. State, 489 So.2d 662
(Ala.Crim.App. 1986).
For the reasons set forth above, this case is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur. *Page 963