First degree manslaughter (uxoricide); sentence: five years imprisonment.
This is an appeal from a conviction resulting from a retrial mandated by this court's reversal of appellant's initial conviction of second degree murder on an indictment charging first degree murder. In order to avoid unnecessary restatement of the essential facts surrounding this case, we adopt the statement of facts reported by this court per Judge Tyson inRenfroe v. State, 49 Ala. App. 713, 275 So.2d 692 (1972). *Page 629 
 I
Appellant contends the trial court erred in refusing to grant his motion to exclude the State's evidence and in refusing to give the affirmative charge to the jury. In approaching this review, we are required to take the evidence favorable to the prosecution as true and accord to the State all legitimate inferences therefrom. Jones v. State, 33 Ala. App. 451,34 So.2d 483 (1948).
From a review of the evidence presented by the State, the following facts and circumstances tended to connect the appellant with the crime:
(1) There was no evidence of forced entry into the house.
(2) The deceased's purse containing over $1,300 was left undisturbed in the master bedroom.
(3) There was evidence of marital discord.
(4) There was testimony that the deceased had telephoned a moving company two days prior to her death.
(5) The testimony of the toxicologist was that death occurred between 2:00 and 6:00 a.m.
(6) In the appellant's statement given to police after properMiranda warnings, appellant said he ate breakfast at home with his wife and departed around 8:00 a.m.
(7) There was testimony from several witnesses who saw appellant eating breakfast in a restaurant about 8:00 a.m. on the morning in question.
In our view the State presented sufficient evidence to make out a prima facie case against the appellant. Thus, we hold that the trial judge properly denied the motion to exclude the State's evidence and the request for the affirmative charge.
 II
Appellant contends that the trial judge erroneously refused to allow appellant to present evidence seeking to prove that one Earl L. Daugherty committed the instant homicide. In his offer of proof, defense counsel summarized the expected testimony of Patricia Bennett, former wife of Earl L. Daugherty. According to defense counsel, Ms. Bennett would have testified that on September 7, 1971, Earl L. Daugherty attempted to choke one Joann Peters in Ray City, Georgia. Defense counsel argued that, since the excluded testimony would have been admissible against Daugherty had he been charged with the instant homicide, it should be admissible in exoneration of the defendant citing Davis v. State, 8 Ala. App. 211, 62 So. 382
(1913). However, appellant's argument is faulty in its presumption of a sufficient connection between Daugherty and the deceased to support a prosecution of Daugherty. The facts, including those in the offer of proof, simply do not establish any reasonable connection between Daugherty and the instant homicide.
 "Even though the accused offers sufficient and proper evidence of another's guilt to render it admissible, such evidence may still, within the discretion of the trial court, be held inadmissible upon the ground of its being too remote from the crime in question." Gamble, McElroy's Alabama Evidence, § 48.01 (11), (3d ed. 1977).
In the instant case appellant seeks to introduce testimony that Daugherty committed a subsequent, unrelated offense in another state in order to show that he could have committed this homicide because both cases involved female victims who were choked. In our view the trial judge properly excluded the testimony concerning the alleged assault of Joann Peters. The proffered testimony relating to the alleged assault of one Doris Register on December 11, 1973, was likewise properly excluded for the same reasons.
According to the testimony of Derrick Vincent and Howard Shell, employers of Daugherty, he would not even have had an opportunity to commit the instant homicide because he was assigned work in another city on the day the victim died. Thus, it was proper to sustain the State's objection to a question seeking to ascertain whether or not the assigned work was done because *Page 630 
such was not probative of the issue of Daugherty's opportunity to commit the offense in question. No error having been shown in the trial judge's individual rulings on these related matters, there can be no cumulative prejudicial effect as argued by appellant.
 III
Appellant contends that the trial judge twice erred during the State's opening statement by overruling defense counsel's objections to the prosecutor's remarks. We need not quote the State's specific remarks deemed objectionable by appellant because we find evidence in the record to support them. Thus, the prosecutor was properly explaining to the jury what he expected the evidence to show. Wilson v. State, 52 Ala. App. 680, 296 So.2d 774, cert. denied, 292 Ala. 759, 296 So.2d 778, cert. denied, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974).
In Winnings v. State, Ala.Cr.App., 370 So.2d 323, cert. denied, Ala., 370 So.2d 329 (1979), we said:
 "The scope and latitude of counsel's opening statement are matters addressed to the trial court's discretion, and such ruling will not be disturbed on appeal without a showing of abuse. . . ."
The trial court did not abuse its discretion in overruling defense counsel's objection to the State's opening statement. Thus, appellant's contentions in this regard clearly are without merit.
 IV
Appellant next contends the trial court erred in allowing the physician who examined appellant's wife on June 23, 1971, to testify over proper objection that sexual intercourse causes heart rate and blood pressure to rise slightly. In his statement to police, appellant said that he had sexual intercourse with his wife on the night before she died. We fail to see the relevancy or materiality of the physician's testimony in this regard. There was no evidence linking the victim's death to either high blood pressure or heart disease. In our view the error, if any, in the admission of the physician's testimony was harmless. Rule 45, Alabama Rules of Appellate Procedure.
 V
Appellant contends that on numerous occasions during his cross-examination of various State witnesses, the trial judge unduly restricted his cross-examination by sustaining the prosecutor's objections. Appellant relies on authority which states in substance that the cross-examiner is entitled to elicit any facts relevant to the issues in the case even though not brought out on direct examination. Furthermore, we find in § 12-21-137, Code of Ala. 1975, the following: "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him."
After careful examination of the portions of the record wherein appellant asserts infringement or undue restriction of his right to cross-examination, we find no justification for such assertions. The law is well settled that the extent of cross-examination is a matter addressed to the sound discretion of the trial court and is not subject to review except in case of abuse. Seals v. State, 282 Ala. 586, 213 So.2d 645 (1968);Maund v. State, Ala.Cr.App., 361 So.2d 1144 (1978). In this case the trial court did not abuse its discretion with respect to its rulings during defense counsel's cross-examination of State witnesses.
 VI
Appellant asserts that the trial court erred in admitting the testimony of several witnesses who saw appellant eating breakfast in a restaurant between 7:30 and 8:30 a.m. on the morning of his wife's death. Appellant's statement to police was in conflict with the testimony of these witnesses. Appellant argues that the witnesses' testimony was irrelevant, immaterial, and offered solely for the purpose of contradicting appellant's statement. Thus, the testimony was an impermissible attempt to impeach appellant's credibility on an immaterial matter. We do not agree with appellant's assertions. *Page 631 
According to the coroner's testimony, appellant's wife died between 2:00 and 6:00 a.m. Appellant told the police he had eaten breakfast at home with his wife and departed around 8:00 a.m. The testimony of witnesses who saw appellant eating breakfast in a restaurant between 7:30 and 8:30 a.m. is therefore certainly material. It has material value, as opposed to being merely contradictory, as it is the earliest documentation by witnesses of appellant's whereabouts on the morning of the homicide. See: Gamble, McElroy's AlabamaEvidence, § 156.01 (3)(4), (3d ed. 1977). Thus, the trial court properly allowed the witnesses' testimony.
 VII
Appellant contends the trial court erroneously allowed a witness who saw appellant eating breakfast in a restaurant about 8:00 a.m. on the morning of the instant homicide to testify that appellant "acted pretty occupied." The record clearly indicates that appellant's objection came too late.Barnett v. State, 52 Ala. App. 260, 291 So.2d 353 (1974). Furthermore, the trial court made no ruling on the objection. Thus, there is nothing for this court to review. Mitchell v.State, Ala.Cr.App., 338 So.2d 524 (1976).
 VIII
Appellant next contends that the State was improperly allowed to elicit opinion evidence from a nonexpert as to the mental status of the appellant while the witness observed him eating breakfast on the morning of the wife's death. From the record:
 "Q. Would you tell the jury how Mr. Renfroe appeared to you that morning?
"A. How he appeared?
"Q. Yes, sir.
 "A. Well, he was quiet. And he was eating eggs and bacon, I think, in a booth there.
 "Q. Was there anything else that attracted your attention to him?
"A. He just didn't act like himself.
"Q. Did —
"MR. BOLTON: Now, Your Honor, I move to exclude that.
"MR. HOLLINGSWORTH: Is that your best judgment?
 "MR. BOLTON: I move to exclude it. I move to exclude it.
"THE COURT: Overruled."
The witness' answer clearly was not an opinion as to appellant's mental status. The witness simply noted that the appellant's behavior was not customary. "Witnesses may always be allowed to testify as to the appearance and emotions of other persons." Hamilton v. State, 281 Ala. 448, 203 So.2d 684
(1967); Garraway v. State, Ala.Cr.App., 337 So.2d 1349 (1976);Beard v. State, Ala.Cr.App., 337 So.2d 1372 (1976). Thus, no error is shown.
 IX
Appellant asserts error in the trial court's failure to grant a mistrial when on two separate occasions Luther D. Brewer, former sheriff of Talladega County, made reference to a previous trial. The initial reference mentioned by the appellant in brief was not objected to nor was there a motion for a mistrial. Furthermore, the reference was so slight as to present no threat of prejudicial effect.
The second reference was as follows: "I told the Court that in that other trial." Extensive discussion was reflected in the record out of the jury's presence as to whether the trial court should give an instruction to the jury to disregard any statement by the witness about another trial. At the request of defense counsel, the trial court did not give a jury instruction. In a private notation to the record, the trial court stated:
 "The Court did not poll the jury and did not instruct the jury after the defense requested it not to. The Court felt that it was wiser not to instruct them since the Defendant requested it, because to do so would simply educate them on what had gone on about a previous trial and that it was of some importance. As it is now the jury really doesn't know whether *Page 632 
they were talking about some other trial not connected with Mr. Renfroe or talking about a preliminary hearing.
 "So, I felt that it was better not to go into detail about it since the Defendant requested me not to. Or the jury could have thought it was a pure mistrial and no more than that. But for me to have remarked on it would have educated them to the fact that there was a previous trial."
In Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967), we find:
 ". . . the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion. . . ."
The trial court did not abuse its discretion in overruling the motion for a mistrial.
AFFIRMED.
All the Judges concur.