[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1199 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1200 
 ON RETURN TO REMAND
The appellant, Olin Grimsley, was convicted of robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975. The appellant was originally charged with murder made capital because the murder occurred during a robbery. A mistrial was declared when the jury was unable to reach a verdict. The appellant was then retried and was acquitted of the murder charge and was found guilty of robbery in the first degree. This court reversed his robbery conviction in Grimsley v.State, 632 So.2d 547 (Ala.Cr.App. 1993), because the trial court had denied the appellant the right to fully cross-examine a state's witness. The appellant was tried again on the robbery charge and was again found guilty. He appealed to this court and we remanded this case so that the trial court could conduct a Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), hearing after considering the Alabama Supreme Court's decision in Ex parte Thomas, 659 So.2d 3 (Ala. 1994).Grimsley v. State, 678 So.2d 1194 (Ala.Cr.App. 1995).
The trial court held a Batson hearing, found no violation ofBatson, and filed a return to remand with this court.
 "A defendant claiming a Batson violat ion must make a prima facie showing that the prosecution used its peremptory strikes in a discriminatory manner. Jackson v. State, 594 So.2d 1289
(Ala.Cr.App. 1991). Only when the defendant establishes facts and circumstances that raise an inference of discrimination must the state give its reasons for its peremptory strikes. Carter v. State, 603 So.2d 1137 (Ala.Cr.App. 1992)."
Stokes v. State, 648 So.2d 1179, 1180 (Ala.Cr.App. 1994). The party against whom a successful Batson challenge is made must give a "legitimate reason" for striking the prospective jurors.Lane v. State, 625 So.2d 1178, 1181 (Ala.Cr.App. 1993). The United States Supreme Court recently in Purkett v. Elem, ___ U.S. ___, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), defined what is a "legitimate reason." The Court stated: *Page 1201 
 "The Court of Appeals appears to have seized on our admonition in Batson that to rebut a prima facie case, the proponent of a strike 'must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges,' Batson, 476 U.S., at 98, n. 20, 106 S.Ct., at 1724, n. 20 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)), and that the reason must be 'related to the particular case to be tried,' 476 U.S., at 98, 106 S.Ct., at 1724. . . . This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection. See Hernandez [v. New York, 500 U.S. 352] at 359, [111 S.Ct. 1859] at 1866, [114 L.Ed.2d 395 (1991)]; cf. Burdine, supra, at 255, 101 S.Ct., at 1094 ('The explanation provided must be legally sufficient to justify a judgment for the defendant')."
___ U.S. ___, 115 S.Ct. at 1771. (Emphasis added.)
The appellant contends that the prosecution struck five black prospective jurors in violation of Batson. The prosecution contended that it struck three prospective jurors because those jurors had the same blood type as the appellant. The prosecution explained that the case involved extensive evidence concerning the blood type of the blood found on a partially smoked cigarette next to the victim's body. The prosecution also stated that all of the prospective jurors who had the same blood type as the appellant were struck. Another prospective black juror was struck because she was a nurse. The prosecutor contended that, because most of the evidence dealt with blood typing, the prosecution did not want someone trained in the medical field on the jury. Another juror was struck because she was a teacher. The prosecution explained that it did not want teachers on the jury because "someone trained as a teacher would have — would put significant importance [on] a person's IQ as to whether or not they could freely, knowingly, and voluntarily waive the Miranda [v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] rights." These reasons related to the facts of the case, were not facially discriminatory, and did not violate Batson. Purkett v. Elem, supra.
 I
The appellant first contends that there was insufficient evidence to support his conviction for first degree robbery. He argues that the trial court erred in denying his motion for a directed verdict and for a new trial.
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis of guilt, but whether a jury might reasonably so conclude."
Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1987).
The state's evidence tended to show that on May 22, 1990, the body of Ella Foy Riley was found in her house in Abbeville. A "Newport" brand cigarette, partially smoked, was found near the victim's body. The victim's pocketbook along with her Social Security card, a check made out to her, her checkbook, and some keys, were found on Marvin Turner Road, approximately six miles from the victim's house. The victim's neighbor, Pamela DeLoach, testified that she had seen a grey car, with two black male occupants, parked by the back door of the victim's house around 10:00 p.m. on the night of May 21. DeLoach described one of the men as having a heavy build and the other as having a medium build. The appellant matched the description of one of the men. A few minutes after she noticed them, the two black males sped away in the car. The neighbor subsequently identified codefendant Willie McNair's car as the car she saw that night parked in front of Riley's house.
Bessie Mae Sanders testified that she saw the appellant and Willie McNair together *Page 1202 
after 9:30 p.m. on May 21. The appellant testified that McNair picked him up in his car around 5:00 p.m. and that they smoked crack cocaine and drank beer. He stated that McNair took him home around 9:00 p.m. Sanders testified that the appellant commonly smoked "Newport" brand cigarettes and that, on the night of May 21, he had a pack of that brand of cigarettes in his pocket. Sanders also testified that she saw the appellant the morning of May 22 and that he had blood on his shirt.
William H. Landrum, a forensic serologist with the Alabama Department of Forensic Sciences, tested the saliva found on the cigarette near the victim's body. His analysis revealed that the saliva on the cigarette was consistent with the appellant's blood type, in that it was from a type "A" secretor.
There was more than sufficient evidence presented for the case to be submitted to the jury. The trial court properly denied the appellant's motion for a directed verdict and submitted this case to the jury.
The appellant also argues that the trial court erred by denying his motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict. Having determined that this case was correctly submitted to the jury, this issue is moot. The trial court correctly denied the motion for a new trial and the motion for a judgment notwithstanding the verdict.
 II
The appellant also contends that the trial court erred in not setting aside his conviction because, he says, the prosecution intentionally violated the attorney-client privilege.
When the appellant first appealed his conviction for robbery he argued that the state violated the attorney-client privilege by obtaining a statement he made to an investigator for a prospective defense counsel who was never retained to represent the appellant. The facts and circumstances surrounding this statement were addressed in depth by this court inGrimsley, where we stated:
 "[I]n this case, the prosecution's action is not ground for reversal because there has been no showing that the investigator fell within the umbrella of the attorney-client privilege.
 "In Alabama, the attorney-client privilege 'applies to communications made by a person to an attorney with a view to retaining him even though it turns out that such person does not retain the attorney or that the attorney declines the offered retainer.' C. Gamble, McElroy's Alabama Evidence § 390.03 (4th ed. 1991). See also Ala. Code 1975, § 12-21-161. 'Communications to the clerk of an attorney, in the belief that he is acting in such capacity, have the same privileged status as communications made to the attorney himself.' McElroy's, § 390.02. Information acquired by an attorney while acting in a nonlegal capacity, such as an investigator, is not protected by the attorney-client privilege.
 "In this case, however, we have a communication made by the appellant to an investigator who was employed by the paralegal, who worked for the attorney and who also had his own investigating firm. Under existing Alabama law, 'both statutory and decisional, the only representative held within the scope of the privilege [is] the attorney's clerk.' Advisory Committee's Notes to Rule 502(a)(4), Proposed A.R.Evid., as published in Southern Reporter Advance Sheets, 615 So.2d, No. 2, May 13, 1993 [adopted January 1, 1996]. See Hawes v. State, 88 Ala. 37, 68, 7 So. 302, 313 (1890) ('It is . . . well established law that an interpreter, intermediary, agent, or clerk of an attorney, through whom communications between attorney and client are made, stands upon the same footing as his principal, and will not be allowed to divulge any fact coming to his knowledge as the conduit of information between them. But the rule extends no further than this. . . . The privilege, in other words, is confined to communications between the attorney and his client; and extends to the necessary organs by which such communications are made, but no further.'). Here, the investigator was the agent of the paralegal, who was the agent of the attorney. There was no showing that the attorney had any knowledge that *Page 1203 
his paralegal was using an investigator to make the initial contact with a potential client.
 " 'Communications to an attorney's law clerk, in the belief that he is acting in a legal capacity, have the same privileged status as communications to the attorney himself. . . .
" '. . . .
 " 'The burden of establishing the privilege rests with the client or with the party objecting to the disclosure of the communication. . . . The client also has the burden of showing that the admission of the privileged information into evidence will be prejudicial to him. . . . Whether a communication is privileged is "a matter solely within the province of the court to determine." . . . Because not every communication made by a client to an attorney is privileged, the trial court must first look at the circumstances of the case in connection with the fact disclosed and determine whether the communication was made "professionally" (i.e., whether it was made professionally is a question of fact for the trial court).'
 "Richards v. Lennox Industries, Inc., 574 So.2d 736, 739-40 (Ala. 1990)."
632 So.2d at 551-58. For the reasons stated above, no violation of the attorney-client privilege occurred here.
 III
The appellant further contends that the court erred in denying his motion for a continuance based on lead counsel's unavailability for trial at the scheduled trial date. The trial court denied the request stating: "Defendant's motion to continue is denied as defendant has two appointed attorneys available and there are no available trial dates for several months after the present setting."
This court in Adkins v. State, 600 So.2d 1054, 1061
(Ala.Cr.App. 1990), remanded, 600 So.2d 1067 (Ala.), on remand,600 So.2d 1072 (Ala.Cr.App. 1992), on return to remand,639 So.2d 522 (1994), stated the following:
 "Several factors to be evaluated when considering the propriety of a continuance are the length of the continuance, the inconvenience to witnesses, counsel, and the court, and whether the 'defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel.' United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).
 "The decision to grant or deny a motion for continuance will not be reversed unless the trial judge has abused his discretion. See Canada. v. State, 421 So.2d 140 (Ala.Cr.App. 1982); Jenkins v. State, 384 So.2d 1135 (Ala.Cr.App. 1979); cert. denied, 384 So.2d 1141 (Ala. 1980).
 "In Jenkins, supra, this court faced a similar issue where a continuance was requested because co-counsel could not participate in the trial due to a death in his family. In that case we noted that 'there was no showing that the appellant could not be adequately represented by the remaining attorney.' This court also stated that the remaining counsel adequately represented the appellant at trial."
Here, the trial court denied the motion for two reasons: (1) the availability of two other attorneys who both had been present at the appellant's first two trials and (2) no other trial date was available for several months. There was no abuse of discretion in denying the appellant's motion for a continuance.
 IV
The appellant further contends that the court erred in denying his motion to dismiss or, in the alternative, for a continuance when an allegedly critical piece of evidence was not produced at trial.
This court in Gurley v. State, 639 So.2d 557 (Ala.Cr.App. 1993), explained Alabama's approach to lost or destroyed evidence. The court stated:
 "In contrast to the 'flat bad faith requirement' of [Arizona v.] Youngblood, [488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)] some commentators and a growing minority of appellate courts have proposed that trial judges dealing with lost *Page 1204 
or destroyed evidence focus not only on the culpability of the police but also on 'the materiality of the [lost] evidence . . . the type of evidence and the impact it could have had at trial.' Note, [The Role of Police Culpability in
Leon and Youngblood] 76 Va.L.Rev. [1213] at 1242 [1990)]. See generally State v. Steffes, 500 N.W.2d 608 (N.D. 1993), wherein the court observed:
 " 'Relying upon state constitutional law, some states hold that even in situations where defendants cannot show bad faith on the part of the state in failing to preserve material evidence, defendants may nonetheless be entitled to an adverse-inference instruction, dismissal, or new trial if they can make a sufficient showing of substantial prejudice. These states take authority from Justice Stevens's concurring opinion in Arizona v. Youngblood wherein he wrote: "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." . . .
 " 'Fairness and an aversion to prejudice have prompted these states to look to their state constitutions to build upon, further expand, or limit the Arizona v. Youngblood test to encompass an "unfair prejudice" prong — either in addition to or at the expense of the bad faith prong. These jurisdictions hold that when the state loses or destroys evidence, the state is subjected to a higher due process standard under their state constitutions than the bad faith test as stated in Arizona v. Youngblood. See, e.g., Lolly v. State, 611 A.2d 956 (Del. 1992); State v. Riggs, 114 N.M. 358, 838 P.2d 975 (1992); State v. Schmid, 487 N.W.2d 539 (Minn.Ct.App. 1992); Commonwealth v. Henderson, 411 Mass. 309, 582 N.E.2d 496 (1991); State v. Matafeo, 71 Haw. 183, 787 P.2d 671 (1990); State v. Smagula, 133 N.H. 600, 578 A.2d 1215 (1990); Spaulding v. State, 195 Ga. App. 420, 394 S.E.2d 111 (1990); Thorne v. Department of Public Safety, 774 P.2d 1326 (Alaska 1989); State v. Fain, 116 Idaho 82, 774 P.2d 252 (1989). See also, State v. Youngblood, 173 Ariz. 502, 844 P.2d 1152 (1993) [Feldman, C.J. concurring and dissenting]. Contra People v. Cooper, 53 Cal.3d 771, 281 Cal.Rptr. 90, 809 P.2d 865 (1991) [adopting Arizona v. Youngblood bad faith standard as a matter of state constitutional law].'
"State v. Steffes, 500 N.W.2d at 611-12 n. 3.
 "The balancing approach taken by the Delaware Supreme Court in Hammond v. State, 569 A.2d 81, 87
(Del. 1989), is representative of the approach used by other courts that have rejected Youngblood's single bad faith standard. That approach is based on the premise that 'fundamental fairness, as an element of due process, requires the State's failure to preserve evidence that could be favorable to the defendant "[t]o be evaluated in the context of the entire record." ' Hammond, 569 A.2d at 87 (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976)) (emphasis added).
 "The Delaware court noted that prior to Youngblood, it had employed a three-factor analysis to decide due process claims arising out of lost or destroyed evidence. In Hammond, 'the State argue[d] that Youngblood has now established a single bright line "good faith" test which should be applied by this Court in lieu of the . . . three-part analysis, whenever a denial of access is asserted with respect to evidence that could be favorable to the defendant.' Hammond, 569 A.2d at 87 (emphasis in original). Declining to accept the State's invitation to adopt a single bright line test, the Hammond court held:
 " 'When evidence has not been preserved, the conduct of the State's agents is a relevant consideration, but it is not determinative. Equally relevant is a consideration of the importance of the missing evidence, the availability of secondary evidence, and the sufficiency of the other evidence presented at trial.'
 "Hammond, 569 A.2d at 87. The court supported the foregoing statement by citing the same quote from Justice Stevens's *Page 1205 
concurrence in Youngblood that was acknowledged, in State v. Steffes, supra, to be the source of authority for jurisdictions rejecting Youngblood, and that was cited by the Alabama Supreme Court in Ex parte Gingo[, 605 So.2d 1237 (Ala. 1992), cert. denied, 506 U.S. 1049, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993)].
 "The Hammond court concluded that it would continue to rely on the following three-part analysis 'pursuant to the "due process" requirements of the Delaware Constitution,' 569 A.2d at 87:
 " '[I]f the duty to preserve evidence has been breached, a Delaware court must consider "(1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence, considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to sustain conviction." '
 "Id. (quoting Bailey v. State, 521 A.2d 1069, 1091
(Del. 1987), and Deberry v. State, 457 A.2d 744, 752 (Del. 1983)) (footnote omitted). See also State v. Shaw, 154 Vt. 648, 577 A.2d 286, 287 (1990) (wherein the court employed ' "a pragmatic balancing" of three factors: (1) the degree of negligence or bad faith on the part of the government; (2) the importance of the evidence lost; and (3) other evidence of guilt adduced at trial').
 "This three-part analysis — which weighs culpability, materiality, and prejudice — is what the Alabama Supreme Court seems to have employed in Ex parte Gingo. In that case, the court considered not only the State's accountability for destroying the evidence, but also the critical nature of the results of the tests on the allegedly hazardous waste and the defendants' inability to refute those test results. But compare United States v. White, 766 F. Supp. 873, 884 (E.D.Wash. 1991) (a case whose facts are virtually identical to Gingo, wherein the court, without commenting on the materiality of the evidence or the prejudice to the defendant from its loss, held that the destruction of test samples on allegedly hazardous waste material did not amount to a due process violation in the absence of bad faith).
 "We conclude that our Supreme Court has adopted in theory, if not in name, a multi-factor balancing test similar to the one used by the Delaware court in Hammond to determine whether the State's loss or destruction of evidence constitutes a due process violation in any given case. We also conclude that the balance will necessarily be drawn differently in every case because 'fundamental fairness, as an element of due process, requires the State's failure to preserve evidence that could be favorable to the defendant "[t]o be evaluated in the context of the entire record." ' Hammond, 569 A.2d at 87 (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342
(1976)) (emphasis added). See State v. Youngblood, 173 Ariz. 502, 844 P.2d 1152, 1161 (1993) (Feldman, C.J., concurring in part and dissenting in part) ('The answer [to the question whether the accused had a fundamentally fair trial despite the State's good faith failure to preserve evidence] is fact-intensive and depends on the quality and quantity of the other evidence, the type of evidence that was lost, its potential value for exculpatory purposes, and similar issues')."
639 So.2d at 566-67. See also Grissom v. State, 624 So.2d 706
(Ala.Cr.App. 1993).
The appellant specifically contends that the court erred in denying his motions when the original cash register receipt from Brown's IGA grocery store, where the appellant purchased some cigarettes on the day of the robbery-murder, was lost. The receipt allegedly showed that the appellant had purchased a certain brand of cigarettes, the same brand of the cigarette found near the victim's body. The prosecutor, in arguing this point, stated:
 "By Mr. Valeska: Just, as I recall the testimony, what she said was that she rang it up, I believe they were a $1.48 each, $2.96 was the total. Then she testified from the stand as I recall what type cigarettes, whether they were generic or subgeneric, differences in price, but I still say we can go ahead. *Page 1206 
 "Secondly, there was a statement introduced by the State that defended the statement, where the defendant admitted that he purchased cigarettes.
". . . .
 "By the Court: I really don't believe those things that you claim missing are material enough in light of other evidence that is available on the same topic, for impeachment and direct also, and I'll deny the motion to dismiss and the motion to continue."
For this court to find a violation of due process because evidence has been lost, we must consider (1) the culpability of the prosecution, (2) the materiality of the lost evidence, and the (3) sufficiency of the other evidence. Gurley, supra.
Here, a copy of the cash register receipt was received into evidence and the clerk testified that the appellant had purchased cigarettes on the day of the murder and that the brand he purchased was the same as the cigarette found near the victim's body. Further, another witness testified that the appellant smoked a certain brand of cigarettes, which was the same as the brand of the cigarette found near the victim's body. Moreover, the serologist testified that the saliva found on the partially smoked cigarette matched the appellant's blood type. There was no violation of due process here and the court did not err in denying the appellant's motions.
 V
The appellant further contends that the court erred in failing to grant his motion for a mistrial when the prosecutor referred to "previous trials." The record shows that both the prosecutor and defense counsel made reference to "a previous trial."
This issue has been addressed in depth by this court inFree v. State, 495 So.2d 1147 (Ala.Cr.App. 1986) and Renfroe v.State, 382 So.2d 627 (Ala.Cr.App. 1980), writ denied,382 So.2d 632 (Ala. 1980). In Free this court stated:
 "Defense counsel . . . objected to the State's reference to appellant's previous trial, and moved for a mistrial. We note that the reference was made to 'a previous trial' and not 'appellant's previous trial.' Appellant's motion for a mistrial was denied. Counsel, outside the presence of the jury, moved that the jury be instructed to disregard any mention of a previous trial, and the motion was granted. However, when the jury returned, the court asked the jury if they remembered the last question asked by the State, to which no juror responded. The court then refused to follow up with an instruction as requested. Appellant contends that because the trial court failed to instruct the jury to disregard the question and answer, the prejudice resulting from the statement was not eradicated and therefore constituted reversible error.
 "We find appellant's argument to be without merit. Under the circumstances, we do not believe that the question and answer concerning the previous trial were of such significance as to be prejudicial to appellant. It could be argued that defense counsel opened the door to the subject by the question he asked about Helton's previous testimony. Moreover, apparently, the question concerning 'a previous trial' made no impression on the jury, for a few minutes after the question was asked, no juror could remember it.
 "The granting of a mistrial is an extreme measure and should be exercised only when manifestly necessary or when the ends of justice would otherwise be defeated. Nix v. State, 370 So.2d 1115 (Ala.Cr.App.), cert. denied, 370 So.2d 1119 (Ala. 1979); § 12-16-233, Code of Alabama 1975. The granting of a mistrial is addressed to the broad discretion of the trial judge, and his ruling will not be revised on appeal unless it clearly appears that such discretion has been abused. Chillous v. State, 405 So.2d 58
(Ala.Cr.App. 1981). In the case before us, the trial judge was in the better position to weigh the matter and determine whether the question had so prejudiced the jury that the ends of justice required the granting of a mistrial. We find no abuse of the trial judge's discretion here. In the light of the record here presented, we are of the opinion that the *Page 1207 
mistrial motion was properly denied. See Phillips v. State, 447 So.2d 1312 (Ala.Cr.App. 1984)."
Free, 495 So.2d at 1157.
In Renfroe, this court stated:
 "Appellant asserts error in the trial court's failure to grant a mistrial when on two separate occasions Luther D. Brewer, former sheriff of Talladega County, made reference to a previous trial. The initial reference mentioned by the appellant in brief was not objected to nor was there a motion for a mistrial. Furthermore, the reference was so slight as to present no threat of prejudicial effect.
 "The second reference was as follows: 'I told the Court that in that other trial.' Extensive discussion was reflected in the record out of the jury's presence as to whether the trial court should give an instruction to the jury to disregard any statement by the witness about another trial. At the request of defense counsel, the trial court did not give a jury instruction. In a private notation to the record, the trial court stated:
 " 'The Court did not poll the jury and did not instruct the jury after the defense requested it not to. The Court felt that it was wiser not to instruct them since the Defendant requested it, because to do so would simply educate them on what had gone on about a previous trial and that it was of some importance. As it is now the jury really doesn't know whether they were talking about some other trial not connected with Mr. Renfroe or talking about a preliminary hearing.
 " 'So, I felt that it was better not to go into detail about it since the Defendant requested me not to. Or the jury could have thought it was a pure mistrial and no more than that. But for me to have remarked on it would have educated them to the fact that there was a previous trial.'
 "In Shadle v. State, 280 Ala. 379, 194 So.2d 538
(1967), we find:
 " '. . . the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion. . . .' "
 "The trial court did not abuse its discretion in overruling the motion for a mistrial."
382 So.2d at 631-32. The references to "a previous trial" were so brief that no prejudice could have possibly occurred. The trial court did not err in denying the appellant's motion for a mistrial.
 VI
The appellant also contends that the court erred in denying his motion for a mistrial when the prosecution referred to a statement made by his codefendant. This issue was not presented to the trial court until the end of the state's case when defense counsel moved for a mistrial because of alleged references to the codefendant's statement. There was no timely objection; therefore, nothing was preserved for appellate review. Nation v. State, 627 So.2d 1156 (Ala.Cr.App. 1993).
 VII
The appellant further asserts that the doctrine of collateral estoppel barred the state from using evidence that the victim had been murdered because, he says, he had previously been acquitted on the murder charge. However, the appellant was being tried only on the first degree robbery charge, not the murder charge. As part of its case-in-chief, the state was required to prove that the appellant used force against the victim and that he was armed with a deadly weapon or that he caused serious physical injury to another. The trial court did not err in allowing the state to introduce evidence that the victim was murdered in order to establish the elements of first degree robbery. § 13A-8-41, Code of Alabama 1975.
 VIII
The appellant further contends that he was subjected to double jeopardy when he *Page 1208 
was tried three times for the same offense. As stated previously, the appellant's first trial, in which he was charged with capital murder, resulted in a mistrial. The appellant was then tried a second time and was acquitted of the murder charge and convicted of robbery. That conviction was reversed and the appellant was tried for a third time and was convicted of robbery. No double jeopardy violation occurred here.
A jury's failure to reach a verdict does not bar retrial.Arizona v. Washington, 434 U.S. 497, 509, 98 S.Ct. 824, 832,54 L.Ed.2d 717 (1978); Cox v. State, 585 So.2d 182 (Ala.Cr.App. 1991), cert. denied, 503 U.S. 987, 112 S.Ct. 1676,118 L.Ed.2d 394 (1992). Nor does a reversal based on errors that occurred at trial bar any subsequent retrial. Zinn v. State,527 So.2d 148 (Ala. 1988).
 IX
The appellant further asserts that the court erred by allowing evidence that he had smoked crack cocaine on the night of the robbery-murder. The appellant presented this issue to the trial court in a motion in limine, which was denied, but he made no objection at trial when this evidence was presented.
 "A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post-judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary."
Miles v. State, 650 So.2d 583, 586 (Ala.Cr.App. 1994), quoting,Parks v. State, 587 So.2d 1012 (Ala. 1991). (Emphasis supplied.) There is no indication in the record that the trial court agreed that a subsequent objection to the cocaine evidence would be unnecessary. Consequently, this issue was not preserved for appellate review. Miles, supra.
 X
The appellant further contends that the trial court erred in denying his motion to quash the indictment. A motion to quash an indictment must be raised by a pretrial motion. See Rule 15.2(a), Ala.R.Crim.P., and Rivers v. State, 624 So.2d 211
(Ala.Cr.App. 1993). This was not done in this case. Therefore, this issue was not preserved for appellate review.
 XI
The appellant further contends that the trial court erred in denying his request for individual voir dire of the jury venire. The record reflects that the jury was questioned in panels. This court in Taylor v. State, 666 So.2d 36
(Ala.Cr.App.), after remand, 666 So.2d 71 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995), stated:
 " 'In Alabama, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination. This rule applies to capital cases, and the granting of a request for individual voir dire is discretionary with the trial court.' Coral v. State, 628 So.2d 954, 968 (Ala.Cr.App. 1992). 'The fact that the appellant's case involved capital murder is not alone reason to require individual voir dire. . . . A trial court's decision in denying individual voir dire examination of a jury panel will not be disturbed on appeal absent an abuse of that discretion.' Smith v. State, 588 So.2d 561, 579 (Ala.Cr.App. 1991). See also Henderson v. State, 583 So.2d 276, 283 (Ala.Cr.App. 1990), affirmed, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268
[117 L.Ed.2d 496] (1992)."
666 So.2d at 66. Because there is no qualified right to individual voir dire, even in capital cases, no error occurred here.
 XII
The appellant further contends that the trial court erred in denying his request to be provided with a daily transcript of the witnesses' testimony. He argues that he was indigent and could not afford a transcript and that a transcript was necessary to point out the inconsistencies in the witnesses' testimony. The right of an indigent to have a free transcript for purposes of appeal to this court is specifically provided for in § 12-22-190, *Page 1209 
Code of Alabama 1975. There is no statutory provision that places the heavy burden on already taxed court reporters of providing daily transcripts. Indeed, such a provision would be unworkable and unrealistic.
 XIII
The appellant further contends that the prosecutor's remarks made during opening statements, throughout the trial, and in closing argument denied him a fair trial.
The record reflects that there were no objections made to the alleged remarks. An objection was made after opening statements were completed but the objection was too late. An objection must be made at the time of the objectionable remark to preserve error for appellate review. Nation, supra.
 XIV
The appellant further argues that the court erred in limiting his time for closing argument. This issue was addressed by this court in Kolmetz v. State, 600 So.2d 389, 395 (Ala.Cr.App. 1991), cert. denied, 600 So.2d 396 (Ala. 1992), in which we stated:
 "Kolmetz contends that the trial court abused its discretion in limiting closing arguments to 30 minutes per side.
 "The trial court is allowed much discretion with respect to limiting arguments of counsel, and in the absence of some abuse of that discretion, no error exists. Smith v. State, 364 So.2d 1
(Ala.Cr.App. 1978).
 "In the case sub judice, although the offenses charged were of a serious nature, the State does not agree that the issues were complex or that the length of the trial dictated that the attorneys should have been allowed a longer closing argument. The State, moreover, had the burden of proving the charges and appeared to be perfectly satisfied with the court's time limitation. Most importantly, Kolmetz does not state how he was prejudiced by the time constraints, and he has, therefore, failed to meet his burden of establishing an abuse of the trial court's discretion in limiting closing arguments."
The appellant has shown no way that he was prejudiced by the time limitations. No abuse of discretion occurred here.
 XV
The appellant further contends that the fine of $5,000 amounted to cruel and unusual punishment because he is indigent. The appellant made no objection to the imposition of the fine. Therefore, nothing was preserved for this court's review. Miles, supra. Furthermore, "Indigent offenders would be advantaged over other offenders if they were not subject to fines because of their inability to pay. Wheatt v. State,410 So.2d 479 (Ala.Cr.App. 1982); Tate v. Short, 401 U.S. 395,91 S.Ct. 668, 28 L.Ed.2d 130 (1971)." Eldridge v. State,418 So.2d 203, 207 (Ala.Cr.App. 1982).
 XVI
The appellant also contends that the court erred in allowing Bessie Mae Sanders to testify because, he says, she was not competent. As the state correctly contends, this issue was not first presented to the trial court by way of objection. Nothing was preserved for our consideration. "It is well settled under Alabama law that matters not objected to at trial cannot be raised or considered for the first time on appeal." Barger v.State, 562 So.2d 650, 656 (Ala.Cr.App. 1989), cert. denied,562 So.2d 656 (Ala. 1990).
 XVII
The appellant further contends that the trial court erred in allowing two knives to be received into evidence at trial. Once again, we note that no objection was made at the time that this evidence was presented. Therefore, this contention was not preserved for appellate review. Barger.
 XVIII
The appellant also asserts that the trial court erred in denying his motion to disclose evidence that he said the prosecutor had gathered concerning prospective jurors. However, the evidence he was seeking to have disclosed is not discoverable. Kelley v. State, 602 So.2d 473 (Ala.Cr.App. 1992). See also Rule 16.1(c)(1), Ala.R.Crim.P. *Page 1210 
 XIX
The appellant further contends that he was unduly prejudiced by the fact that the victim's daughter sat at counsel table. In Alabama, a representative of a victim has a statutory right to sit at counsel table. § 15-14-50, Code of Alabama 1975. This court has further found that this results in no violation of any constitutional guarantees. Williams v. State,601 So.2d 1062 (Ala.Cr.App.), aff'd, 662 So.2d 929 (Ala.), cert. denied,506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992).
 XX
The appellant also asserts that the trial court erred in allowing the state to ask leading questions of its own witnesses. "[L]eading questions may be allowed on direct examination, depending on the circumstances of the particular case." Williams v. State, 568 So.2d 354, 357 (Ala.Cr.App. 1990). A trial court's decision to allow the state to ask leading questions of its own witness will not be reversed "except for a flagrant violation." Williams, 568 So.2d at 356. The only cited instance where the appellant objected to leading questions being asked by the state occurred during the testimony of Bessie Mae Sanders. However, the court had indicated that the state could lead Ms. Sanders in order to refresh her memory concerning testimony she had given previously. This was permissible. Lake v. State, 390 So.2d 1088
(Ala.Cr.App. 1980).
 XXI
The appellant last contends that the trial court erred in denying his challenge for cause of a prospective juror who worked in law enforcement. This juror stated that he was not prejudiced in favor of law enforcement, but indicated that he believed that law enforcement officers were better trained in the area of observation than ordinary citizens. The trial court denied the appellant's challenge for cause, stating, "I'll deny [that challenge]. I think he said if it came down to the issue of observation and those type things — I think several of [the jurors] made that type response, due to their training."
"The test for determining whether a strike rises to the level of a challenge for cause is 'whether a juror can set aside their opinions and try the case fairly and impartially, according to the law and the evidence.' Marshall v. State,598 So.2d 14, 16 (Ala.Cr.App. 1991)." Dunning v. State,659 So.2d 995, 997 (Ala.Cr.App. 1994). Moreover, "[t]he courts in this state have long held that a prospective juror may not be struck for cause based solely on the fact that he is a deputy sheriff or involved in law enforcement." Humphrey v. State,591 So.2d 583, 585 (Ala.Cr.App. 1991). Here, the challenged juror merely echoed the sentiment of several other jurors that law enforcement personal are generally better trained than laymen to observe details of a crime scene. Because the juror unequivocally stated that he was not prejudiced in favor of law enforcement, we find no error with the trial court's denial of the appellant's challenge for cause.
For the foregoing reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.