The appellant was indicted and charged with murder, made capital because it was committed during a robbery in the first degree. See § 13A-5-40(a)(2), Code of Alabama 1975. After entering a plea of not guilty, the appellant was convicted of the lesser included offense of felony murder. The appellant was sentenced to 26 years' imprisonment in the state penitentiary.
The state's evidence tended to show as follows: On November 3, 1989, the appellant, who was 15 years old at the time, accompanied a group of youths to a teenage establishment known as The Showboat. However, some of the young men did not have enough money to pay the cover charge so the group decided to "scare" someone into giving them money. The state's evidence showed that the appellant walked with the others down to a First Alabama Bank branch, where they saw the *Page 391 
victim approach the bank's automatic teller machine. The appellant approached the victim and demanded money. When the victim refused, the appellant shot the victim with an automatic pistol. The appellant along with the others ran from the scene.
The appellant claimed that he thought the gun was unloaded. He further claimed that he had meant only to scare the victim and that he had not meant to shoot the victim.
Initially a petition of delinquency alleging felony murder was filed in the juvenile court against the appellant. Later, the juvenile court granted the state's motion to transfer the appellant to the circuit court to stand trial as an adult. The appellant appealed the transfer order and this court affirmed by unpublished memorandum opinion in J.R. v. State,567 So.2d 1370 (Ala.Crim.App. 1990), writ quashed, Ex parte J.R.,582 So.2d 444 (Ala. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 122, 116 L.Ed.2d 90 (Ala. 1991).
 I
The appellant contends that the trial court erred in admitting into evidence a statement he had given to the police. Specifically, the appellant argues that his consent to give the statement was involuntary because, he says, the police failed to inform him that he could telephone his parents or that they could be present during the questioning. He further claims that the police made no effort to contact his parents or to provide him with an adequate opportunity to do so prior to subjecting him to police questioning. Thus, the appellant claims that his rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated.
In the appellant's prior appeal of the transfer order, this court held in an unpublished memorandum opinion that "the appellant was fully apprised" of his rights. J.R. v. State,567 So.2d 1370 (Ala.Crim.App. 1990). This court further held that the "statement given by him while in police custody was correctly received into evidence." J.R., supra.
However, even if this court had not previously so held, the state in this case never tried to introduce the appellant's statement into evidence. (R. 744.) While the state did use the appellant's statement for impeachment purposes, we find no evidence that the appellant objected to that use of the statement. (R. 926-33.) Thus, this issue has not been preserved for appellate review.
 II
The appellant contends that the indictment charging him with capital murder violated the jurisdiction of the juvenile court because he was charged with a different offense than was alleged in the original petition. The appellant argues that jurisdiction cannot be waived without proof and proper cause on the charge made the basis for the transfer. The appellant contends further that § 12-15-13, Code of Alabama 1975, confers original jurisdiction to the Juvenile Court on matters regarding the delinquency, dependency, or need of supervision of children. Section 12-15-34, Code of Alabama 1975, authorizes, upon the finding of probable cause and consideration of six factors therein, a juvenile court to transfer a child to be certified and tried as an adult. Section 12-15-34(g) precludes a preliminary hearing in adult court for a child who has been transferred there, because the Juvenile Court already considers probable cause issues on the said charge. The appellant contends that he never received a preliminary hearing on capital murder and was never charged with capital murder in Juvenile Court.
The appellant raised this issue in his prior appeal of the transfer order. J.R. v. State, 567 So.2d 1370 (Ala.Crim.App. 1990). This court considered this issue at that time and decided it adversely to the appellant. Therefore, we decline to review this identical issue on appeal.
 III
The appellant contends that the trial court erred in denying his motion to suppress the videotape from First Alabama *Page 392 
Bank's surveillance camera. The videotape was introduced into evidence to identify the appellant as the gunman who had shot the victim. Specifically, the appellant argues that because the series of shots filmed by the camera had lapses in time between frames that required the frames to be spliced together for playback, the videotape was not an accurate depiction of the events surrounding the shooting. We disagree and conclude that the trial court did not err in denying the appellant's motion to suppress the videotape.
At the hearing on the appellant's motion to suppress the videotape, the state offered specific and detailed evidence regarding the equipment and the method of filming used by First Alabama Bank. This evidence included testimony by Mr. Tim Gruber, the director of corporate security at First Alabama Bank. Gruber testified regarding the methods used to merge the recorded images filmed by the surveillance camera to produce the videotape.
This court endorsed the "silent witness" theory of admissibility regarding videotaped evidence in Molina v. State,533 So.2d 701 (Ala.Crim.App. 1988). This court noted that "[t]he 'silent witness' theory of admissibility has been principally relied upon to admit X-ray photographs . . . and films taken by surveillance cameras when there were no humans present." Molina, at 710 (citations omitted). Molina held further: "Although the traditional 'chain of custody' predicate is not required under the 'silent witness' theory, . . . if there are no available eyewitnesses to verify the accuracy of the recording at issue, then there should be some testimony which establishes 'the fidelity of the film's portrayal.' "Id., at 710 (citations omitted).
In this case, the state's evidence indicated that the First Alabama Bank branch where the victim was killed used seven surveillance cameras. One of these cameras filmed the "general area immediately in front of the automatic teller." (R. 78.) There was no available witness to testify as to the accuracy of the videotaped recording. However, we conclude that under the "silent witness" standard, the videotape was properly admitted, because the state's evidence adequately established the fidelity and accuracy of the recording.
 IV
The appellant contends that the trial court erred when it denied his motion for a mistrial, which was based upon allegedly improper questioning by the state. During the appellant's testimony in the trial of this case, the appellant appeared to suffer an emotional breakdown on the stand, and the trial court called for a brief recess. Upon return from the recess, the prosecution asked the appellant whether he had been laughing and joking in the hall with a young lady during the recess. On appeal, the appellant contends that this questioning was highly inflammatory and unduly prejudicial and that the prosecutor violated the "unsworn witness rule," thereby denying him a fair trial.
Following the appellant's objection and his move for a mistrial based on this question, the trial court admonished the prosecutor that he could not testify and that his questioning amounted to testifying. Then, the following exchange occurred between the trial judge and the jury:
 "THE COURT: Ladies and gentlemen, before I sent you out the last question by the prosecutor this Court determined to be improper, and there is no evidence before you that suggests that the defendant was laughing and joking. I will instruct you to proceed with that fact. The question I believe was 'wasn't he out there laughing with someone?' You disregard the question and disregard any answer you may have perceived. You let that not be a part of your consideration in deliberating guilt or innocence in this case. Can you each tell me that you can do that?
"(Jury responded affirmatively.)" (R. 905-906.)
Recently, this court has held that:
 "There is a prima facie presumption against error when the trial court immediately charges the jury to disregard improper remarks or answers. Desimer v. State, 535 So.2d 238 (Ala.Crim.App. 1988); *Page 393 Dixon v. State, 476 So.2d 1236 (Ala.Crim.App. 1985); Elmore v. State, 414 So.2d 175
(Ala.Crim.App. 1982). 'A motion for mistrial implies a miscarriage of justice and should only be granted where it is apparent that justice cannot be afforded.' Dixon at 1240; Young v. State, 416 So.2d 1109 (Ala.Crim.App. 1982). 'A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted.' Dixon at 1240; Elmore. A mistrial is an extreme measure and should be denied when the prejudicial quality of the comment can be eradicated by curative instructions. Dixon; Young; Elmore."
Garrett v. State, 580 So.2d 58, 59-60 (Ala.Crim.App. 1991). We find that the improper questioning by the prosecution was cured by the trial court's curative instructions to the jury. The trial court properly denied the appellant's motion for a mistrial.
 V
The appellant contends that the trial court erred when it denied the appellant's motion for a mistrial after the bailiff informed the court that he had discovered a drawing on the chalkboard in the jury room of a man with a noose around his neck. The court was informed of this discovery prior to its oral charge to the jury. Upon questioning about this drawing by the court, a juror informed the court that the jurors were playing a word game known as "hangman." After making a determination as to which juror had initiated the game, the trial court stated that it believed the mind of this particular juror was "fixed" and excused this juror. The court then asked the jury as a whole whether "hangman" was merely a word game and whether they could decide the case based on the evidence presented at trial. The jurors stated that they could. The appellant argues that the juror's playing of "hangman" activity constituted jury misconduct and deprived him of a fair trial.
Again, we follow the rule set forth in Garrett cited in Part IV above, that the trial court has broad discretion on the question of whether to grant a mistrial. Additionally, this court has previously held: "Whether alleged juror misconduct has resulted in an impartial trial is to be determined by the trial judge and his decision will be reversed only for clear abuse of discretion." Hartley v. State, 516 So.2d 802, 805
(Ala.Cr.App. 1986). We find no clear abuse of discretion on the part of the trial judge in this case. Recently, this court held that, "due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."Samuels v. State, 584 So.2d 958, 961 (Ala.Crim.App. 1991), cert. denied, 584 So.2d 963 (Ala. 1991). In this case, the trial judge excused the juror who had initiated the questionable game of "hangman." Next, he examined the jurors regarding the word game and whether they could decide the case based upon the evidence presented at trial. After the judge's questioning, all members of the jury affirmed that they could decide the facts based on the evidence. We are satisfied that the trial judge's actions regarding this issue were sufficient to allow him to be sure that the jury was not prejudiced or biased. The trial court correctly denied the appellant's motion for a mistrial as to this issue.
The judgment of the Jefferson Circuit Court is affirmed.
AFFIRMED.
All the Judges concur, except TAYLOR, J., who dissents with opinion.