2021 IL App (1st) 190593-U

No. 1-19-0593

Order filed September 16, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18 CR 9407 |
| | ) | |
| DARYLE HALL, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where: (1) his guilt was established beyond a reasonable doubt; (2) denial of his motion *in limine* to exclude identification testimony based on a home surveillance video was not in error; (3) defendant failed to establish plain error resulting from unobjected-to testimony; (4) defendant failed to establish plain error resulting from the trial court's failure to issue a limiting instruction; and (5) sufficient foundation was laid for the admission of a home surveillance video.

¶ 2    Defendant Daryle Hall was charged in an eighteen-count indictment with five counts of attempted first degree murder (720 ILCS 5/8-4(a), 5/9-1(a)(1) (West 2018)) (Counts 1-5); one

count of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2018)) (Count 6); four counts of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)) (Counts 7-10); aggravated unlawful use of weapon (720 ILCS 5/24-1.6(a)(1), (3)(A-5) (West 2018)) (Count 11); aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (3)(C) (West 2018)) (Count 12); aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (3)(D) (West 2018)) (Count 13); aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (3)(I) (West 2018)) (Count 14); aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(2), (3)(A-5) (West 2018)) (Count 15); aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(2), (3)(C) (West 2018)) (Count 16); aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a) (2), (3)(D) (West 2018)) (Count 17); and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(2), (3)(I) (West 2018)) (Count 18).

¶ 3     The trial court granted defendant's motion to sever his case from codefendant Marvell Pearson and his motion to sever Counts 7-10 from the remaining charges. The State nolle prosequied Counts 8-10, and the jury convicted defendant of unlawful use or possession of a weapon by a felon (Count 7). The trial court sentenced defendant to nine years in the Illinois Department of Corrections. Defendant then entered into a fully negotiated plea on the severed aggravated battery charge (Count 6). Under the terms of the plea deal, the State nolle prosequied Counts 1-5, and defendant received a concurrent nine-year sentence on the aggravated battery charge.

¶ 4     For the reasons that follow, we affirm.[1]

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 5                    I. BACKGROUND

¶ 6                  A. Pretrial Proceedings

¶ 7      On January 11, 2019, defendant filed a motion *in limine* that sought, *inter alia* to prevent Officer Mark Evans from identifying him based on People's Exhibit No. 1, a home surveillance video that captured the offense. Defendant's motion alleged that such identification should be disallowed because before viewing the video, Officer Evans knew that a gunshot victim had identified defendant as one of his assailants. Defendant's motion also alleged that Officer Evans could not make a reliable identification of him where the home surveillance video showed neither the shooter's face nor any unique or distinguishing characteristics. Defendant also claimed that he would be prejudiced by the jury hearing that Officer Evans, a gang enforcement officer, had prior contacts with him. Defendant maintained that Officer Evans' testimony would ultimately invade the province of the jury who could "observe the surveillance video for themselves."

¶ 8      On January 11, 2019, the trial court heard arguments on defendant's motion. The defense argued that Officer Evans should be prohibited from identifying defendant where his earlier identification was only made after Officer Evans knew that the victim had identified defendant as his assailant. Defense counsel further argued that testimony by Officer Evans concerning his identification of defendant based on the home surveillance video would allow the jury to hear other-crimes evidence.

¶ 9      When, in response to questioning by the trial court, defense counsel admitted that Officer Evans knew defendant prior to this incident, the court stated, "[t]hen certainly he will be allowed to testify that is your client on the video." However, the court indicated that it would not permit Officer Evans to testify that he arrested defendant on 15 prior occasions. The trial court rejected

defendant's claim that Officer Evans' identification was necessarily tainted due to him possessing information that the victim had previously identified defendant as his assailant before viewing the home surveillance video. The trial court observed that counsel could decide, as a matter of trial strategy, to cross-examine Officer Evans as to these matters.

¶ 10 Defendant maintained that such testimony should still be disallowed because of its prejudicial impact. The trial court replied, "[e]very case is prejudicial. It has to be unduly." The trial court then indicated that "we will put some protections in there ***" and directed the State to "stay away from how long have you known Mr. Hall." The trial court stated: "The law is clear. If the person independently knows this individual before the incident, then he can say that's the person and you can cross examine."

¶ 11 On January 14, 2019, before the trial commenced, the State noted that the caselaw (*People v. Thompson*, 2016 IL 118667) required that defendant be permitted to question the identifying officer about his prior knowledge of defendant, experiences with defendant, and basis of his identification before the court determined the admissibility of the testimony. The State then represented that the court:

> "[a]fforded the defense that opportunity this morning. I was present when they questioned Officer Evans with regards to this prior knowledge of the defendant, the length of time he has known him, as well as how many incidents and how familiar he is with him."

¶ 12 The court indicated that it wished to "spread it of record" and granted defense counsel another opportunity to question Officer Evans. The questioning that followed revealed that before this incident, Officer Evans knew defendant for three and a half to four years, during which time

he was face-to-face with him 15 to 20 times, and that two of those occasions involved processing defendant for arrests, which took two to three hours.

¶ 13    The trial court found that a sufficient basis existed to permit Officer Evans to identify defendant from the home surveillance video. Recognizing the concerns expressed by defendant, however, the court instructed Officer Evans that he could not bring up defendant's prior arrests unless the defense inquired about them.

¶ 14    The State then sought further clarification, indicating its belief that the court should rule on the precise parameters of Officer Evans' testimony. The State requested:

> "We would be asking that he be allowed to say that he has known him for
> three to four years and he's seen him 15 to 20 times. Sometimes, two to three hours
> in length."

¶ 15    In response to the State's request, defense counsel replied, "No objection." The court allowed the State's request. The court asked Officer Evans how many times he previously processed defendant. Officer Evans replied, "[t]wice personally. And one other time as an assistant." The court ruled that the two prior arrests would be referred to as "occasions."

¶ 16    Prior to opening statements, the court instructed the entire jury as to multiple overriding principles of law, including that:

> "Remember, I told you the witness stand is almost like that's the starting of
> a race. Just because somebody has a title, they don't have to start in back of it. And
> just because somebody has a title, they don't start in front of it. Once people start
> testifying, that's when you use your common sense, your life experience and all the

other evidence in this case to evaluate how much weight to be given to their testimony."

¶ 17                                B. Trial Testimony

¶ 18    Officer Patricia Sheridan testified that on June 18, 2018,[2] at approximately noon, she responded to a report of a shooting at 5217 South Peoria Street. Officer Sheridan was in a marked police vehicle and was wearing a body-worn camera. Officer Sheridan turned the body-worn camera on at 12:03 pm.

¶ 19    Prior to testifying, Officer Sheridan reviewed footage from her body-worn camera and a home surveillance video taken from 5205 South Peoria Street (People's Exhibit No. 1). Officer Sheridan identified People's Exhibit No. 1 as a DVD of surveillance footage from the home surveillance video. Officer Sheridan testified that still images from her body-worn camera video (People's Exhibit Nos. 2 and 3) depicted her arrival at 5217 South Peoria Street at 12:03 p.m. Officer Sheridan also identified still images from the home surveillance video that depicted her arrival at the scene.

¶ 20    In comparing the date and time markings on her body-worn camera with the date and time markings on the home surveillance video, Officer Sheridan determined that the date and time stamps on the home surveillance video were inaccurate by 21 days 23 hours. The home

---

[2] In response to the State's questions which began by asking Officer Sheridan about her actions on June 18, 2018, Officer Sheridan repeatedly testified about the events of June 18, 2018. This error was cleared up on cross-examination when defense counsel inquired as to Officer Sheridan's failure to test the home surveillance system on June 8, 2018. The remaining evidence, including Officer Sheridan's correct calculation of the 21-day 23-hour discrepancy between the date and time markings on her body-worn camera and the date and time markings on the home surveillance video and the testimony of Officer Richard Sanchez and Officer Evans clarify that the date of the shooting was June 8, 2018, not June 18, 2018.

surveillance video erroneously indicated that the shooting occurred on May 17, 2018, at 12:15 p.m.

¶ 21    When the State sought to introduce People's Exhibit No. 1 into evidence, the defense stated, "Your Honor, I object to the foundation." The State replied that a proper foundation was laid where Officer Sheridan identified herself on the still images and the video. The court ruled as follows: "I will allow you wide latitude on cross examination and subject to a motion to strike. At this time, overruled. Go ahead."

¶ 22    On cross-examination, the defense established that Officer Sheridan did not witness the offense, did not know the working order of the surveillance system on June 8, 2018, and only saw the home surveillance video three days before she testified. Officer Sheridan testified that she was unfamiliar with the surveillance system itself. Following his cross-examination of Officer Sheridan, defense counsel neither sought reconsideration of the trial court's ruling on the admissibility of the videotape nor moved to strike Officer Sheridan's testimony.

¶ 23    Officer Richard Sanchez, an evidence technician with the Chicago Police Department, testified that on June 8, 2018, he processed the shooting scene on the 5200 block of South Peoria Street. Officer Sanchez found multiple fired cartridge cases on the parkway and sidewalk, which he photographed, recovered, and inventoried. The fired cartridge cases included an RP 9 mm luger located in the street, an RP 9 mm luger and a S&W Winchester 40 cartridge located on the grass parkway, and an S&W Federal 40 cartridge located on the sidewalk in front of the home located at 5207 South Peoria Street.

¶ 24    Officer Mark Evans testified that on June 11, 2018, he was working as part of a team on the Deering Violent Crimes Task Force out of the Bureau of Organized Crime. Officer Evans was

working in plain clothes in an unmarked car. Two other officers on the team were about a block away in another vehicle, and Officer Evans was in communication with them *via* a Nextel "push talk" device.

¶ 25    The team's assignment was to "find" defendant, known to Officer Evans as "Little D." Officer Evans did not need a photograph to locate defendant because Officer Evans knew defendant since October of 2014 and was in face-to-face contact with him approximately 15 to 20 times during that time frame. Officer Evans testified that on two prior occasions, he spent approximately two to three hours with defendant.

¶ 26    On June 11, 2018, at approximately 1 p.m., Officer Evans went to the "Back of the Yards" neighborhood where he located defendant on the 5100 block of South Racine Avenue. Officer Evans testified that the intersection of 52nd Street and Racine Avenue is about 3½ to 4 blocks west of 5207 South Peoria Street. Defendant was arrested and taken to the Area Central Detective Division at 51st Street and Racine Avenue.

¶ 27    When he was arrested, defendant was wearing a black Adidas hooded sweatshirt with zippers in the front that were outlined in gray, medium stone washed jeans with rips and tears, and white and gray low top gym shoes. Officer Evans identified each clothing article as the same clothing that defendant was wearing when he was arrested. Officer Evans also identified photographs depicting defendant wearing the same clothing while seated in an interview room at the police station.

¶ 28    Officer Evans further testified that he assisted the detectives by watching a surveillance video of the shooting. Officer Evans identified People's Exhibit No. 1 as the same surveillance

video footage that he first viewed on the day of the shooting and testified that the video was in the same or substantially the same condition as when he first viewed it.

¶ 29    When the State asked leave to publish People's Exhibit No. 1 in conjunction with Officer Evans' testimony, the court asked whether the defense had any objection, and defense counsel replied, "No objection, Judge." With the aid of the home surveillance video and still photographs taken from it, Officer Evans then identified defendant as the person wearing a black hooded sweatshirt and distressed blue jeans, firing a semiautomatic handgun in a southbound direction on the parkway area of the 5200 block of South Peoria Street and then turning around and running northbound on South Peoria Street. Officer Evans also identified still shots of defendant taken from the home surveillance video (People's Exhibit Nos. 6-11).

¶ 30    On cross-examination, defense counsel established that Officer Evans went to arrest defendant at the request of Detective Audie Manois. Leading up to defendant's arrest, Officer Evans informed Detective Manois that defendant went by the name of "Little D." Officer Evans did not personally inventory defendant's clothing.

¶ 31    The parties stipulated that defendant was convicted of a felony offense. The State moved to admit People's Exhibit Nos. 2 through 23, which included the still photographs from Officer Sheridan's body camera as well as the still photographs from the home surveillance video in evidence. Based on defendant's assertion that he had "[n]o objection to the admission of such evidence," the trial court admitted all of the exhibits.

¶ 32    The State then rested. After his motion for directed finding was denied, the defense rested. The parties then gave closing arguments, and the court instructed the jury. As is pertinent to this appeal, the jury was instructed:

"You have before you evidence that a law enforcement officer made an identification of the defendant from a video recording. It is for you to determine what weight, if any, should be given to that evidence. In determining the weight to be given to this evidence, you should not draw any inference from the fact that the witness is a law enforcement officer."

¶ 33    During the course of its deliberations, the jury sent out three notes. In response to the first note that asked, "[w]hat was the reason that police were sent to pick up the defendant?" the parties agreed that the jury should be instructed that they had received the evidence and should continue to deliberate. With the parties' agreement, the court sent the following response: "Dear Jury, You have all the evidence. Please continue to deliberate. Thank you! Judge Vince Gaughan."

¶ 34    In response to the second note, which requested "[d]efinition of beyond a reasonable doubt?" the parties agreed that no definition of reasonable doubt should be given based on *People v. Downs*, 2015 IL 117934. The parties agreed to the court's response: "Dear Jury, I cannot give you a definition of reasonable doubt. It is your duty to define reasonable doubt. Thank you! Judge Vince Gaughan."

¶ 35    Less than two hours after the jury began their deliberations, the jury sent a third note which indicated: "Can't get a [unanimous] [decision]." The parties agreed that the court should instruct the jury to continue to deliberate and agreed to the following response: "Dear Jury You have received all the evidence in this case. Please continue to deliberate. Thank you! Judge Vince Gaughan."

¶ 36    The jury then returned a guilty verdict on the charge of unlawful possession or use of a weapon by a felon. The record does not indicate how much time transpired between the third note and the verdict.

¶ 37    On March 7, 2019, the court sentenced defendant to nine years in the Illinois Department of Corrections. Defendant then entered a negotiated plea of guilty to the previously severed aggravated battery charge (Count 6), in exchange for a concurrent nine-year sentence. All remaining charges were nolle prosequied.

¶ 38                                II. ANALYSIS

¶ 39    On appeal, defendant alleges: (1) his guilt was not established beyond a reasonable doubt; (2) his motion *in limine* to preclude Officer Evans from identifying him from the home surveillance video was improperly denied; (3) Officer Evans gave irrelevant and prejudicial testimony; (4) the court failed to provide a limiting instruction when Officer Evans testified; and (5) the home surveillance video was admitted into evidence without a proper foundation. We consider each argument in turn.

¶ 40                             A. Reasonable Doubt

¶ 41    Defendant first contends that the State's evidence was insufficient to establish his guilt beyond a reasonable doubt. When the sufficiency of the evidence is challenged, a criminal conviction will not be set aside unless the evidence, when viewed in the light most favorable to the prosecution, is so improbable or unsatisfactory that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). This standard applies in all cases, regardless of the nature of the evidence. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002).

¶ 42    A reviewing court may not retry the defendant. *People v. Rivera*, 166 Ill. 2d 279, 287 (1995). The trier of fact assesses the credibility of the witnesses and the weight to be given to their testimony, resolves conflicts in the evidence, and draws reasonable inferences therefrom, and we will not substitute our judgment for that of the trier of fact on these matters. *People v. Hommerson*, 399 Ill. App. 3d 405, 411 (2010). Testimony may only be found insufficient under the *Jackson* standard, where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 43    In this case, to convict defendant guilty of unlawful use of a weapon by a felon, the jury had to find both that defendant knowingly possessed a firearm, and that defendant was previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). Where defendant stipulated that he was previously convicted of an offense that qualified under section 5/24-1.1(a) of the Criminal Code, the only remaining question is whether the evidence established that defendant knowingly possessed a firearm. Viewing the evidence in the light most favorable to the State, we conclude that this element of the offense was proven beyond a reasonable doubt.

¶ 44    While defendant alleges that the evidence was insufficient to establish that he possessed a firearm, his argument, however, relies in part on the claimed inadmissibility of the home surveillance video and Officer Evans' identification testimony. We believe that reliance on such evidentiary rulings improperly conflates two distinct analytical claims and undermines the *Jackson* standard. We will not graft defendant's admissibility claims onto what remains a reasonable doubt claim that requires consideration of the evidence heard by the trier of fact. Again, we are charged with determining whether such evidence, viewed in the light most favorable to the prosecution, is so improbable or unsatisfactory that a rational trier of fact could not have found the essential

elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19; *Collins*, 106 Ill. 2d at 261.

¶ 45    Here, Officer Evans' uncontroverted testimony established that he knew defendant for four years before the commission of this offense, during which time he interacted with defendant between 15 and 20 times. On two of those occasions, he was in prolonged contact with defendant for two or three hours. Defendant was arrested three days after this offense, only three to four blocks away, wearing what the trier of fact could reasonably conclude was the same clothing depicted in the home surveillance video. We disagree with defendant's assessment of the probative value of this evidence. A reasonable trier of fact could find that the hoody, pants, and shoes that defendant was arrested in were identical to what was depicted on the home surveillance video. Of particular significance is the grey piping around the zippers on the front of the hoody, which appears in both the still photographs and the home surveillance video. The jury was given the actual clothing and had ample basis to convict defendant. We will not substitute our judgment for that of the jury.

¶ 46    We likewise reject defendant's claim that the jury's requested definition of reasonable doubt and expressed lack of unanimity may properly support his request for an outright reversal of his conviction. We believe that defendant erroneously relies on an inapposite proposition of law to support his position where he states:

>    "This Court has held that notes during deliberations indicating an *impasse* can show that the evidence in a case was closely balanced. *People v. Lee*, 2019 IL App (1st) 162563, ¶ 67. Accordingly, it follows that the jury's notes to the trial court about reasonable doubt and the *impasse* it had reached support Hall's

argument that the State's evidence was insufficient to prove that he was guilty of possessing a firearm beyond a reasonable doubt."

¶ 47     We do not believe that a reviewing court's consideration of jury notes in deciding whether a case is "closely balanced" such that plain error review is appropriate makes "it follow" that consideration of jury notes is appropriate as a basis for outright reversal of a conviction. The extension of such concept to a sufficiency of the evidence claims would both threaten to undermine the *Jackson* standard and contravene the prohibition against impeaching a jury's verdict with evidence of their motive, method or process of deliberations. *People v. Sullivan*, 2011 IL App (4th) 10005, ¶¶ 24-26.

¶ 48     Even if we were to consider the notes, however, it would not alter our opinion. One need only quickly peruse *People v. Downs*, 2015 IL 117934, to note that it is a commonplace fact that juries routinely request a definition of "reasonable doubt." Nor does the jury's lack of unanimity a mere two hours into their deliberations make the evidence in this case "closely balanced." We further note that assessing the strength of the evidence based on a jury's questions ignores the possibility that the notes are reflective of a "holdout juror." *People v. McCoy*, 405 Ill. App. 3d 269, 278 (2010).

¶ 49     For the aforementioned reasons, we find that the evidence was sufficient to convict defendant of unlawful use or possession of a weapon by a felon.

¶ 50                                    B. Denial of Defendant's Motion *in Limine*

¶ 51     In his next assignment of error, defendant alleges that the trial court erroneously allowed Officer Evans to identify defendant from the surveillance video. We disagree.

¶ 52    In *People v. Thompson*, 2016 IL 118667, ¶ 50, our supreme court held that lay opinion identification testimony of an officer is admissible under Illinois Rule of Evidence 701 (eff. Jan. 1, 2011) if:

> "(a) the testimony is rationally based on the perception of the witness and (b) the testimony is helpful to a clear understanding of the witness's testimony or a determination of a fact in issue. Lay opinion identification testimony is helpful where there is some basis for concluding the witness is more likely to correctly identify the defendant from the surveillance recording than the jury. A showing of sustained contact, intimate familiarity, or special knowledge of the defendant is not required. Rather, the witness must only have had contact with the defendant, that the jury would not possess, to achieve a level of familiarity that renders the opinion helpful."

¶ 53    In deciding the admissibility of the evidence, the court should employ a totality of the circumstances approach and consider the following factors:

> "the witness's general familiarity with the defendant; the witnesses' familiarity with the defendant at the time the recording was made or where the witness observed the defendant dressed in a manner similar to the individual depicted in the recording; whether the defendant was disguised in the recording or changed his/her appearance between the time of the recording and trial; and the clarity of the recording and extent to which the individual is depicted." *Id*. ¶ 51.

¶ 54    The existence of one or more of these factors will permit the evidence to be admitted, while the absence of any factor does not render the evidence inadmissible. *Id.* ¶ 49. The trial court's determination is reviewed under an abuse of discretion standard. *Id.*

¶ 55    Defendant alleges that the trial court erroneously denied his motion *in limine* where it failed to apply a "totality of the circumstances" approach and consider each of the factors discussed in *Thompson*. Defendant alleges that the trial court's ruling relied on an explicitly rejected requirement that the witness has familiarity with defendant at or before the time of the recording.

¶ 56    We believe that defendant misapprehends the import of *Thompson*, which expanded the bases for the admission of lay witness identification testimony and rejected a higher standard of proven familiarity between the witness and the accused:

> "A showing of sustained contact, intimate familiarity or special knowledge of the defendant is not required. Rather, the witness must only have had contact with the defendant, that the jury would not possess, to achieve a level of familiarity that renders the opinion helpful." *Thompson*, 2016 IL 118667, ¶ 50.

¶ 57    While *Thompson* does not require proven familiarity as a basis for admitting such evidence, it certainly does not disallow evidence that meets that higher standard. Here, Judge Gaughan simply recognized the enduring force that proven familiarity between the witness and the accused retains as a basis for admitting such identification testimony.

¶ 58    The fact that Judge Gaughan did not view the surveillance video does not alter our conclusion where *Thompson* explicitly held that the absence of any relevant factor does not render the evidence inadmissible. *Id.* ¶ 51. We also note that defendant never requested that the trial court review the surveillance video before ruling on its admissibility and did not allege this as an error

in his posttrial motion. As such, this complaint is forfeited. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005) ("Defendant must both specifically object at trial and raise the issue again in a post-trial motion to preserve any alleged error for review.") We reject defendant's attempt to now broaden the basis of his objection to the admission of Officer Evans' testimony on appeal.

¶ 59     Furthermore, we have viewed the surveillance video and disagree with defendant's claim that had Judge Gaughan looked at the surveillance video that he would have granted defendant's motion. The surveillance video does not compel the conclusion that Officer Evans was not better suited to identify defendant than was the jury. While it is true that the video does not contain a close-up view of the shooter's face, the images depicted on it are clearly visible. Based on his uncontroverted familiarity with defendant, we find that Officer Evans was properly permitted to identify defendant from the home surveillance video.

¶ 60     We also reject defendant's claim that Officer Evans should have been disallowed from identifying him because he possessed prior knowledge that the victim had identified defendant as the shooter. Nothing in *Thompson* purports to require that evidence be excluded for this reason. Where *Thompson* held that the extent of the witness's opportunity to observe the defendant only goes to the weight to be accorded such evidence and not to its admissibility, *Thompson*, 2016 IL 118667, ¶ 53, we find that the same principle holds true in this case. We agree with the trial court that Officer Evans was certainly subject to cross-examination as to these matters but that these facts implicated the weight to be accorded the evidence and not its admissibility.

¶ 61     The trial court gave defense counsel wide berth to exercise his discretion in conducting his cross-examination of Officer Evans and defense counsel cautiously availed himself of that right.

Defense counsel elicited that defendant was arrested by Officer Evans at Detective Manois'

direction only after Officer Evans told Detective Manois that defendant was known as "Little D."

¶ 62    Finally, insofar as defendant's claim of undue prejudice is concerned, we note that the trial

court followed the procedure set out in *Thompson* by granting the defense two opportunities to

question Officer Evans; one which was spread of record, and one which was apparently not

recorded. As the court properly noted, the probative value of the evidence must be substantially

outweighed in order to be excluded under Illinois Rule of Evidence 403 (eff. Jan. 1, 2011). While

the identification testimony was undoubtedly the linchpin of the State's case, that fact alone did

not make it either unfairly prejudicial or potentially misleading. See, *Swift v. Schleicher*, 2017 IL

App (2d) 170218, ¶ 78 ("Relevant evidence may, nevertheless, be excluded if it is unfairly

prejudicial or has the potential to mislead the jury."). We agree with the trial court's finding that

the probative value of Officer Evans' testimony was not clearly outweighed by its prejudicial

nature.

¶ 63                            C. Testimony of Officer Evans

¶ 64    Next, defendant faults the trial court for allowing Officer Evans to provide irrelevant and

prejudicial testimony. Defendant acknowledges that this claim was forfeited but claims that his

forfeiture should be excused under the plain error doctrine. We disagree.

¶ 65    Specifically, defendant claims that even if Officer Evans could properly testify to his

identification of defendant from the surveillance video that "the trial court nonetheless erred by

allowing all of Evans' additional testimony surrounding his identification, which was irrelevant

and highly prejudicial." Defendant alleges that *Thompson* was violated where (1) Officer Evans

testified that he knew defendant since October of 2014, had face-to-face contact with him 15 to 20

times during that time frame and spent between two and three hours with him on two prior occasions, and (2) Officer Evans testified that he was working as part of the Deering Violent Crimes Task Force out of the Bureau of Organized Crime, was working in plain clothes and in an unmarked car alongside two other officers, one of whom was an ATF officer. We reject both claims of error.

¶ 66                                    1. Officer Evans' Familiarity with Defendant

¶ 67    To the extent that defendant now charges that Officer Evans was improperly permitted to testify to his familiarity with defendant, such claim is not well taken. To preserve an issue for appellate review, both a trial objection and a written posttrial motion raising the issue are required. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). A defendant who fails to preserve an issue in a posttrial motion forfeits review of such issue unless he can establish plain error. *Id*. Under the plain error doctrine, we may consider a forfeited claim when

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 68    However, plain error review only applies to cases involving procedural forfeiture, not those that involve affirmative acquiescence. *People v. Ortega*, 2021 IL App (1st) 182396, ¶ 87; *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 29. Waiver involves the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a

known right. *People v. Phipps*, 238 Ill. 2d 54, 62 (2010). "In the course of representing their clients, trial attorneys may (1) make a tactical decision not to object to otherwise objectionable matters, which thereby waives appeal of such matters, or (2) fail to recognize the objectionable nature of the matter at issue, which results in procedural forfeiture." *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011). In determining whether a claim is waived, the court will examine the particular facts and circumstances of the case. *Phipps*, 238 Ill. 2d at 62.

¶ 69    Here, defendant's motion *in limine* sought to prevent Officer Evans from testifying to his prior contacts with defendant where such testimony would be prejudicial. While the trial court denied defendant's motion to bar Officer Evans from identifying defendant from the surveillance video, it took pains to ameliorate the potential prejudicial impact of such testimony by instructing Officer Evans that he was disallowed from testifying that he previously arrested defendant. Even more precautionary measures were taken at the State's request when the State made an oral proffer as to precisely what testimony it sought to produce from Officer Evans. The State explicitly requested: "[w]e would be asking that he be allowed to say that he has known him for three to four years and he's seen him 15 to 20 times. Sometimes, two to three hours in length." Before the court ruled on the request, defense counsel stated, "[n]o objection."

¶ 70    Officer Evans' testimony did not stray from these agreed-upon parameters where he testified that he knew defendant since October 2014, had face-to-face contact with him approximately 15-20 times, and spent two to three hours with him on two separate occasions. Defendant plainly stated "no objection" disallows him from now alleging as error what he acquiesced to before the trial court. *People v. Ortega*, 2021 IL App (1st) 182396, ¶ 87.

¶ 71                                    2. Officer Evans' Assignment

¶ 72     Turning to defendant's claim that Officer Evans should have been disallowed from testifying that he was part of the Deering Violent Crimes Task Force out of the Bureau of Organized Crime, was working in plain clothes and in an unmarked car alongside two other officers, one of whom was an ATF officer we find no plain error. Our conclusion finds support in the fact that defense counsel's motion *in limine* sought to exclude what he believed to be potentially prejudicial to defendant; namely, gang evidence. Defendant's motion *in limine* alleged that Officer Evans's identification as a gang enforcement officer would allow the jury to make inferences that would prejudice him. The court granted defendant's request to disallow any gang evidence. Notably, Officer Evans did *not* identify himself as a gang enforcement officer. Officer Evans's only testified about the arrest in this matter. The manner under which an individual comes to be arrested is properly admitted at trial. *People v. Chambers*, 179 Ill. App. 3d 565, 583-84 (1989).

¶ 73     We do not believe that the unobjected-to introductory remarks by Officer Evans constituted clear error to permit plain error review of this claim. Our conclusion finds support in *People v. Butler*, 58 Ill. 2d 45, 48-49 (1974), where the court rejected the defendant's fully preserved claim of error where the arresting officer testified that the defendant was arrested and taken to "Area 4 Homicide Unit," removed to central detention facilities and later returned to "Area 4 Homicide". The court found that while some jurors may have concluded that the defendant had been originally arrested for another murder, that it "seems unlikely and is by no means certain that they did so." *Id*. at 49.

¶ 74   In this case, we find it even more unlikely that Officer Evans' discussion of his assignment caused the jury to draw any negative inferences. In sum, we reject defendant's claim of error based on Officer Evans' testimony.

¶ 75                    D. Jury Instructions Concerning Officer Evans

¶ 76   Defendant also challenges the trial court's failure to contemporaneously instruct the jurors that they should not draw any adverse inferences from Officer Evans' status as a police officer at the time that such testimony was elicited. Defendant asks that we review this claim under the plain error doctrine. As has been previously discussed, under the plain error doctrine, issues not properly preserved may be considered by a reviewing court when the evidence is closely balanced or when the error is so substantial that it is necessary to remedy the error to preserve the integrity of the judicial process. *People v. Hall*, 194 Ill. 2d 305, 335 (2000).

¶ 77   In *People v. Lopez*, 371 Ill. App. 3d 920, 939 (2007), the defendant alleged that the trial court's failure to provide a limiting instruction at the time other crimes evidence was introduced constituted plain error. The court disagreed, finding that no evidence rebutted the presumption that the jury followed the oral and written limiting instruction given at the close of the evidence. See also *People v. Rush*, 401 Ill. App. 3d 1, 16 (2010) (failure to provide a limiting instruction to the jury to explain the limited purpose for the admission of evidence related to the investigative steps taken by police waived by the defendant).

¶ 78   Here, we decline to find plain error. The trial court explicitly instructed the jury before the start of the trial that:

> "[r]emember, I told you the witness stand is almost like that's the starting
>
> of a race. Just because somebody has a title, they don't have to start in back of it.

And just because somebody has a title, they don't start in front of it. Once people start testifying, that's when you use your common sense, your life experience and all the other evidence in this case to evaluate how much weight to be given to their testimony."

¶ 79    After the parties rested, the court properly instructed the jury:

"You have before you evidence that a law enforcement officer made an identification of the defendant from a video recording. It is for you to determine what weight, if any, should be given to that evidence. In determining the weight to be given to this evidence, you should not draw any inference from the fact that the witness is a law enforcement officer."

¶ 80    Defendant has failed to show that the trial court's failure to provide a contemporaneous limiting instruction when Officer Evans testified constituted a clear error where defendant requested no limiting instruction, where before the trial even began, the trial court alluded to the instruction and where the instruction was properly given at the conclusion of the trial.

¶ 81                          E. Admissibility of Surveillance Video

¶ 82    In his final assignment of error, defendant alleges that no proper foundation was laid for introducing the home surveillance video. The State maintains that the trial court did not err in allowing the videotape to be admitted into evidence. We agree with the State.

¶ 83    A recording containing video is admissible if the State presents the necessary foundation for its admission. *People v. Smith*, 321 Ill. App. 3d 669, 674, (2001). A proper foundation may be laid by an individual who has personal knowledge of the filmed object and who can testify that the film accurately portrays what it purports to show. *In re D.Q.*, 2016 IL App (1st) 160680, ¶ 25.

This foundational consideration is a lower standard than the one used when admitting videotape under the "silent witness" theory.

¶ 84    Under the "silent witness" theory, "a witness need not testify to the accuracy of the image depicted in the photographic or videotape evidence if the accuracy of the process that produced the evidence is established with an adequate foundation." *In re D.Q.*, 2016 IL App (1st) 160680, ¶ 25, citing *People v. Taylor*, 2011 IL 110067, ¶ 32.

¶ 85    The admission of a surveillance video is within the sound discretion of the trial court whose decision will not be disturbed absence an abuse of discretion. *Taylor*, 2011 IL 110067, ¶ 27. An abuse of discretion occurs when the court's ruling is fanciful, unreasonable, or where no reasonable person would adopt the trial court's view. *Id.*

¶ 86    In *Taylor*, our supreme court examined the foundational requirements for the admission of surveillance camera recordings. *Taylor*, 2011 IL 110067, ¶¶ 30-35. At trial, the defendant filed a motion *in limine* to bar the State from using a VHS tape that depicted a theft. The recording contained a 29-second skip. *Id.* ¶ 11. The appellate court reversed and remanded, finding that the State failed to lay a proper foundation where it did not establish the reliability of the process that produced the tape. *Id.* ¶ 22. The appellate court held that the State failed to: (1) establish a proper chain of custody; (2) establish that the camera was working properly, and that the original DVR recording was preserved; and (3) explain the process of copying the recording on the DVR to the VHS tape. *Id.* ¶ 22.

¶ 87    Our supreme court agreed with the appellate court that the trial court may consider the following factors in determining the admissibility of a video recording under the "silent witness" theory: (1) the device's capability for recording and general reliability; (2) competency of the

operator; (3) proper operation of the device; (4) showing the manner in which the recording was preserved (chain of custody); (5) identification of the persons, locale, or objects depicted; and (6) explanation of any copying or duplication process. *Id*. ¶ 35. The court cautioned, however, that while the referenced factors are properly considered, they comprise a non-exclusive list of factors that may be considered and that each case must be evaluated on its own particular facts, with the dispositive issue being the accuracy and reliability of the process that produced the recording. *Id*. ¶ 35.

¶ 88    After considering the case's particular facts, the supreme court rejected the appellate court's determination that an inadequate foundation was laid to admit the recording. *Id*. ¶ 36. With respect to the defendant's claim that the State failed to establish a proper foundation based on the 29-second skip, the court held:

> "The record discloses that the first segment recorded for 12 seconds, nothing recorded for 29 seconds, then the second segment recorded for 8 seconds. In any event, the fact that the camera recorded for fewer than 15 seconds is not fatal to a finding that the camera was working properly. While the camera may not have worked perfectly, it clearly worked. As one court has stated, "[t]he fact that the tape[ ] exist[s] at all is evidence that the tape recorder was functional and that [the operator] knew how to operate it." *Willett v. Russell M. Stookey, P.C.*, 568 S.E.2d 520, 526 (Ga. Ct. App. 2002). Moreover, "the evidence showed that the camera was working at least well enough for the events and persons portrayed thereon to be recognizable." *Smith v. State*, 647 S.E.2d 346, 349 (Ga. Ct. App. 2007). See *Oslund*, 453 F.3d at 1056; *Robinson v. State*,

621 So. 2d 389 (Ala. Crim. App. 1993). See also Carl T. Drechsler, *Admissibility of Videotape Film in Evidence in Criminal Trial*, 60 A.L.R.3d 333, -10- § 2(a) (1974) ("[T]he fact that portions of a [recording] are inaudible or incomplete does not bar the use of the film as evidence, unless *** [it is] so substantial as to render the film as a whole untrustworthy"); Jordan S. Gruber, *Foundation for Contemporaneous Videotape Evidence*, *in* 16 Am. Jur. Proof of Facts 3d 493, § 27, at 539-40 (1992) (videotape may have technical problems, including missing segments; however, this does not require automatic exclusion if videotape is sufficiently probative and that decision is left to sound discretion of trial judge); Jordan S. Gruber, *Videotape Evidence*, *in* 44 Am. Jur. Trials 171, § 67, at 300 (1992) (same). The State adequately demonstrated the camera and system were able to record and were generally operating properly." *Id*. ¶ 39.

¶ 89    In *D.Q.*, this court considered whether the State laid a sufficient foundation to admit a video that showed a minor being repeatedly struck by a female adult. *In re D.Q.*, 2016 IL App (1st) 160680, ¶ 23. The minor's father, Christopher Q., testified that he received the video from the respondent on his cell phone and then provided it to the River Grove police department. *Id*. ¶ 9. Christopher Q. testified that the video that was played in court was identical to the video that he received on his cell phone, and it showed the respondent abusing his daughter *Id*. ¶¶ 8-9. The trial court admitted the video into evidence over the respondent's objection to lack of a sufficient foundation. *Id*. ¶ 18.

¶ 90    This court found that an adequate foundation for the video was laid under both the "silent witness" and "personal knowledge" theories to admit such evidence. *Id*. ¶¶ 26-27. The court relied

on the fact that Christopher Q. positively identified both the respondent and D.Q. and that "the camera used to record the video was clearly operational at the time and was able to record sufficiently clearly so that the individuals in the video were identifiable, as were their actions." *Id*. ¶ 28. Relying on *Taylor*, the court found Christopher Q.'s testimony sufficient to demonstrate the authenticity of the recording where he testified that the video that he received on his cell phone was "the exact same video" played in court, and that there was no evidence that the video was altered or tampered with to make it unreliable or untrustworthy. *Id*. ¶ 28. The court concluded that the juvenile court properly exercised its discretion in admitting the recording. *Id*. ¶ 30.

¶ 91   We follow our supreme court's instruction in *Taylor* and evaluate this claim on its own particular facts. In so doing, we consider both the enumerated factors in *Taylor* and any other relevant evidence that establishes the accuracy and reliability of the process that produced the recording. *Taylor*, 2011 IL 110067, ¶ 35. We find the evidence provided sufficient indicia of accuracy and reliability to satisfy the foundational requirements for admission of the home surveillance video.

¶ 92   Officer Sheridan's testimony established her personal knowledge of that portion of the surveillance video that showed her arrival at the scene of the shooting approximately fifteen minutes after it occurred. Officer Sheridan's testimony shored up the apparent date and time discrepancy in the home surveillance video. A comparison of the recordings from the body camera with the surveillance video established that the surveillance video was inaccurate by 21 days and 23 hours, meaning that although the surveillance video indicated that the date and time of the shooting were May 17, 2018, at 12:15 p.m., the actual event transpired on June 8, 2018, at 11:48 a.m.

¶ 93    We reject defendant's claim that Officer Sheridan's testimony was insufficient to establish the necessary foundation for that portion of the video for which she lacked personal knowledge. Such argument cannot be reconciled with *Taylor*, where our supreme court specifically rejected the 29-second gap in the recording as a basis for disallowing its admission into evidence. We have reviewed the video in its entirety, and it clearly depicts the front yard at 5205 South Peoria Avenue, as well as the adjacent sidewalk and street. The recording contains an uninterrupted 25 minute and 3-second recording that depicts the shooting and subsequent activities in the area, including the arrival of the police on the scene. Officer Evans testified that People's Exhibit No. 1 was in the same or substantially the same condition as the home surveillance video that he reviewed on June 11, 2018. Officer Evans further testified that he assisted the detectives by watching a surveillance video of the shooting. With the aid of the home surveillance video and still photographs taken from it, Officer Evans then identified defendant as the person wearing a black hooded sweatshirt and distressed blue jeans, firing a semiautomatic handgun in a southbound direction on the parkway area of the 5200 block of South Peoria Street and then turning around and running northbound on South Peoria Street. Officer Evans identified People's Exhibit No. 1 as the same surveillance video footage that he first viewed on the day of the shooting and testified that the video was in the same or substantially the same condition as when he first viewed it. Nothing about this recording suggests that it is inaccurate or altered in any way. In conclusion, we find no error in the trial court's admission of the home surveillance video into evidence.

¶ 94                                III. CONCLUSION

¶ 95    For the foregoing reasons, we affirm defendant's conviction.

¶ 96    Affirmed.